Jackie M. RAISOR, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. C-1-81-476.

United States District Court,
S. D. Ohio, W. D.

June 9, 1982.

Edward A. Icove, Legal Aid Society of Cincinnati, Cincinnati, Ohio, for plaintiff.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge:

Plaintiff, mother of a recipient of Supplemental Security Income (SSI) benefits, brought this action on behalf of her son, Ike Raisor, under 42 U.S.C. § 405(g), seeking review of the Secretary's decision finding that Ike is no longer disabled as defined under 42 U.S.C. § 1382c(a)(3)(A) and terminating Ike's SSI benefits. Plaintiff has filed a motion for summary judgment supported by supplemental memoranda (doc. 5). Defendant has not responded so the case is ripe for decision. Southern District of Ohio Rule 4.0.2. The motion for summary judgment is hereby overruled because the case is here for general judicial review. The issue before this Court is whether the Secretary's final decision terminating Ike's SSI benefits is supported by substantial evidence.

The question before the Administrative Law Judge (ALJ) was whether Ike's eligibility for SSI benefits on the basis of disability pursuant to 42 U.S.C.

§ 1382c(a)(3)(A) had ended, thus requiring termination of his benefits. In order to be considered disabled under this section, a claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, *in the case of a child under the age of eighteen*, if he suffers from any medically determinable physical or mental impairment of comparable severity). 42 U.S.C. § 1382c(a)(3)(A). Specifically, a claimant will be considered disabled if he is not engaging in substantial gainful activity and his impairment is included in the Listings of Impairments, 20 C.F.R., Subpart P, Appendix 1; 20 C.F.R., Subpart I, Appendix 1, or if his impairment is determined to be the medical equivalent of a listed impairment. 20 C.F.R. §§ 404.-1503, 416.915. The particular listings which apply to Ike's claim are found under 20 C.F.R., Subpart P, Appendix 1, § 3.03B and 20 C.F.R., Subpart I, Appendix 1, § 102.-08B3.

█ The standard to apply on review is whether there is "substantial evidence" to support the findings of the Secretary. 42 U.S.C. § 405(g). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla of evidence but less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Combs v. Gardner*, 382 F.2d 949 (6th Cir. 1967); *Miracle v. Celebrezze*, 351 F.2d 361 (6th Cir. 1965). Finally, substantiality of the evidence depends on the record as a whole. *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978); *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Plaintiff is a nine-year-old male who has suffered from a hearing impairment and asthma since birth. The Supplemental Security Income program, which replaced the federal grants-in-aid programs to states, gives direct financial assistance to individuals who are aged 65 or over, or blind, or disabled, and whose income resources fall within certain limits. 81 C.J.S. Social Security and Public Welfare § 95. Plaintiff's son (whose income eligibility is not in issue) was deemed to be disabled for purposes of receiving SSI benefits in October, 1977. On June 19, 1980, plaintiff was sent a Notice of Planned Action Medical by the Social Security Administration indicating that, after review of his case pursuant to Section 1631(a)(5) of the Social Security Act, Ike was no longer considered disabled and, therefore, benefit payments would be terminated. On June 25, 1980, plaintiff timely requested a hearing. An ALJ, before whom the claimant, his father, plaintiff-mother, plaintiff's attorney, and a medical advisor appeared on November 13, 1980, considered plaintiff's case *de novo*, and, on January 21, 1981, ruled that Ike was no longer disabled for purposes of receiving SSI benefits. This decision became the final decision of the Secretary of Health and Human Services when the Appeals Council adopted it on April 30, 1981.

In order to continue receiving SSI benefits, a claimant has the burden of showing that his disabilities fit within at least one of those listed in the Listings of Impairments. 20 C.F.R. §§ 404.1502, 404.1503. Plaintiff has argued that Ike is still eligible for SSI benefits for his hearing impairment because his hearing disability corresponds to the following listing under 20 C.F.R., Subpart I, Appendix 1:

§ 102.08 Hearing Impairments

B. For children 5 years of age and above at time of adjudication:

3. Inability to hear air conduction thresholds at an average of 40 decibels (db) or greater in the better ear, and a speech and language disorder which significantly affects the clarity and content of the speech and is attributable to the hearing impairment.

Furthermore, plaintiff contends that Ike's asthma problem corresponds to the follow-

ing listing under 20 C.F.R., Subpart P, Appendix 1:

§ 3.03 Asthma. With:

B. Episodes of severe attacks in spite of prescribed treatment, occurring at least once every 2 months or on an average of at least 6 times a year and prolonged expiration with wheezing or rhonchi between attacks.

In support of these claims, plaintiff essentially relies upon the reports of three persons: Mr. Jack DeBoer, a University of Cincinnati audiologist who has been examining Ike since 1977; Ms. Rebecca Coop, a speech-language pathologist in the Clermont County school system who has been working with Ike, a student in that school system, since 1979; and Dr. James Allen, a pulmonary specialist who, pursuant to an order by the ALJ, tested Ike's pulmonary functions. This evidence is briefly discussed below.

Mr. DeBoer, the audiologist, has been seeing Ike annually since June 16, 1977. He initially tested Ike's hearing at that time and prescribed hearing aids for him. Mr. DeBoer again tested Ike's hearing on June 22, 1978, May 15, 1979, and July 8, 1980. After his most recent testing of Ike's hearing (July 8, 1980), Mr. DeBoer reported that Ike had average hearing threshold of 62 in his better ear and 67 in his poorer ear. In addition, Mr. DeBoer stated that Ike's "speech discrimination ability would probably be significantly reduced in the presence of background noise as is often present in the classroom." While Mr. DeBoer stated that he could not provide any information about Ike's other disabilities, he felt that "Ike does have a significant hearing problem," and "in light of the fact that Ike has other medical problems besides the hearing loss, he should still be considered for disability."

Ms. Rebecca Coop, Speech-Language Pathologist for the Clermont County school system, submitted a report concerning Ike's speaking abilities, in light of the second part of the listing requirement under § 102.08B3, on March 13, 1981. It must be noted here that while this report was not submitted to the ALJ and thus he was not aware of its findings when he wrote his opinion, the report was submitted to the Appeals Council, ordered by the Appeals Council to be incorporated into the record on April 29, 1981, and considered by the Council in its decision accepting the ALJ's decision on April 30, 1981. Ms. Coop has been working with Ike since September, 1979, at Batavia Elementary School. Ms. Coop, along with other special education professionals and teachers at the school, regularly tests Ike to determine the quality of his language skills and syntax development. The results of one test, the Peabody Picture Vocabulary Test, indicated that Ike's vocabulary is three and one-half years behind that of an average child his age. In another test, the Northwestern Syntax Screening Test, Ike scored below the 10th percentile for his age group in syntax development. Based upon the results of these and other tests, and the fact that Ike, according to his teachers, has made "very little progress in the area of language skills," Ms. Coop concluded the following: "It is my professional opinion that Ike's speech (articulation) and language (both receptive and expressive) disorder is attributed to his hearing impairment and does significantly affect the clarity and content of his speech patterns."

Dr. James Allen is a pulmonary specialist at the University of Cincinnati Medical Center and tested Ike's pulmonary functions pursuant to a request made by the ALJ for a Disability Exam on November 29, 1980. Among other findings, Dr. Allen reported that Ike is "totally incapacitated" three to four times per month, primarily in the summer months but also all during the year, because of asthma attacks. Ike's expiratory respiration was found to be "minimally prolonged," and, upon listening to Ike's chest, rhonchi were heard. In addition, Ike's father testified at the ALJ hearing that Ike wheezes nearly every morning and frequently must be brought inside from playing in order to relax.

In addition to the above, Dr. Charles Perry, M.D., a specialist in internal medicine

and cardiology, and a medical advisor appointed by the Social Security Administration, testified at the ALJ hearing about Ike's hearing disability and asthma condition. During his initial testimony, Dr. Perry stated that, based upon reports he had seen, he believed that Ike did continue to qualify for SSI benefits due to his compliance with § 102.08B3. At that point, the ALJ asked Ike to come forward and proceeded to ask him questions in order to ascertain the nature of Ike's speech impairment. Plaintiff's attorney also asked Ike some questions. After questioning Ike, the ALJ asked Dr. Perry once again whether Ike complied with the speech disability requirements of § 102.08B3, to which Dr. Perry replied in the negative. In addition, Dr. Perry listened to Ike breathe in the courtroom and stated that he could hear no wheezing at that time.

Based upon the above reports and testimony (excluding Ms. Coop's report of March 13, 1981), the ALJ concluded that Ike "does not have any impairments which meet or equal in severity the Listing of Impairments and his medical condition is not otherwise equivalent to that which would prevent an adult from performing substantial gainful activity." Therefore, the ALJ concluded, Ike "is not disabled within the meaning of § 1614(a)(3)(A) of the Act and his eligibility to supplemental security income has ended."

■ The Court finds that the ALJ's conclusions are not supported by substantial evidence. First, in examining Ike's hearing impairment as it corresponds to the applicable section of the Listing of Impairments (§ 102.08B3, *supra*), the ALJ stated that, while Ike's decibel range clearly falls within the, limits imposed under the first part of the section, Ike does not fulfill the second part of the section ("a speech and language disorder which significantly affects the clarity and content of the speech and is attributable to the hearing impairment."). In finding that Ike's "ability to speak is quite adequate," the ALJ relied solely upon his (and eventually Dr. Perry's) conclusions after listening to Ike answer questions at

the hearing. While the ALJ did not have the benefit of Ms. Coop's report of March 13, 1981, and Mr. DeBoer, as Ike's audiologist, declined to draw any conclusions regarding Ike's speaking abilities, it is this Court's opinion that, taken alone, Ike's testimony at the hearing and the observations of Dr. Perry, upon which the ALJ's conclusions were based, do not constitute substantial evidence of Ike's abilities. Neither the ALJ nor Dr. Perry have any expertise in the areas of speech therapy or speech pathology, and, in fact, when asked by plaintiff's attorney, Dr. Perry admitted that he was "a little bit out of [his] field." The ALJ asked Ike a series of very simple and often leading questions which almost always could be and were answered by Ike with a yes or a no. While Ike's utterances of "yeah" or "no" may have constituted "adequate" speaking ability in the mind of the ALJ, there was no way in which he or Dr. Perry could have determined whether the clarity and content of Ike's speech was "adequate" in comparison to that of other nine-year-olds, or whether an expert in the field would have considered Ike's speaking ability as "adequate." (It is noteworthy that those answers by Ike which were more substantial than a mere yes or no response were often so poorly constructed as to be nearly incoherent.) As can be seen in Ms. Coop's report of March 13, 1981, a determination concerning a child's speaking ability can only be made after careful examination of the child's sentence structure, syntax, pronunciation, and vocabulary, in light of the child's age and background. Surely, a rational conclusion could not have been drawn after hearing Ike answer "yeah" or "no" to a few minutes worth of questions. As it turned out, Ms. Coop reported that Ike's vocabulary is three and one-half years behind that of his age group, and, furthermore, in her opinion, Ike does fulfill the second part of § 102.08B3. While an ALJ can clearly make observations regarding a claimant's subjective manifestations of pain while in the courtroom, a determination that a child possesses adequate speaking ability can only be made by one with a specially trained ear. Also, it is worth not-

ing that the courtroom was quiet during the ALJ's questioning of Ike. Ike's ability to understand questions spoken while the questioner is directly facing him in an artificially quiet environment is no indication of Ike's abilities while in the naturally noisy environment surrounding him at home or in the classroom. Indeed, Ike's father testified, and Mr. DeBoer agreed, that Ike better understands words spoken to him directly (Ike can and does read lips) in an environment free of background noise. In sum, as to Ike's eligibility for SSI benefits pursuant to the Listing of Impairments found in 20 C.F.R., Subpart I, Appendix 1, § 102.-08B3, the ALJ did not base his termination of benefits on substantial evidence.

Second, it is even more clear that, in examining Ike's asthma ailment as it corresponds to the Listing of Impairments found in 20 C.F.R., Subpart P, Appendix 1, § 3.03B (Asthma), the ALJ did not base his decision upon substantial evidence. While the ALJ, in his opinion, discusses the findings of Dr. James Allen, a pulmonary specialist appointed by the Social Security Administration to perform tests on Ike, the ALJ fails to give proper weight to his findings. Hence, while Dr. Allen stated, in his report of November 29, 1980, that, based upon emergency room records and his examination, Ike is "totally incapacitated" by asthma attacks three to four times per month in the summer and several times during the remainder of the year, indicating that Ike fulfills the first requirement of § 3.03B, the ALJ stated in his opinion that Ike "has had only a few asthma attacks since [January, 1979]." While Dr. Allen stated that Ike has prolonged expiratory respiration and has heard rhonchi in Ike's chest, thus indicating that Ike fulfills the second and third parts of § 3.03B, the ALJ stated initially that "there was no evidence of . . . rhonchi," then later wrote that Dr. Allen had found "a few rhonchi." Last, while Ike's father testified that Ike wheezed every morning, the ALJ relied solely on Dr. Perry's observation that Ike was not wheezing during the hearing to find that "there was no evidence of wheezing." It is clear, based upon Dr. Allen's

findings, that Ike's asthma condition is sufficiently severe to fulfill the three-prong requirement of § 3.03B of the Listing of Impairments. The ALJ's decision terminating Ike's benefits for his asthma disability is not based on substantial evidence.

For the foregoing reasons, the Court finds that the Secretary's decision terminating Ike Raisor's SSI benefits is not supported by substantial evidence and must, therefore, be reversed.

SO ORDERED.