William SPRADLIN, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,
Defendant–Appellee.

No. 93–3541.

United States District Court,
S.D. Ohio,
Western Division.

March 9, 1993.

Jonathan Alister Horwitz, Jonathan A. Horwitz Co., Dayton, OH, for plaintiff.

Joseph E. Kane, U.S. Attorney's Office, Columbus, OH, Anne Kenny Kleinman, Office of General Counsel, Dept. of H.H.S., Chicago, IL, for defendant.

DECISION AND ENTRY ADOPTING RE-PORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (DOC. # 10) IN ITS ENTIRE-TY; PLAINTIFF'S OBJECTIONS (DOC. # 12) OVERRULED; PLAIN-TIFF'S STATEMENT OF SPECIFIC ERRORS (DOC. # 8) OVERRULED; JUDGMENT ENTERED IN FAVOR OF DEFENDANT–SECRETARY AND AGAINST PLAINTIFF; TER-MINATION ENTRY

RICE, District Judge.

This is an appeal from a final decision of the Defendant denying Disability Insurance Benefits to the Plaintiff. The Court referred this case to the United States Magistrate Judge for a report and recommendation. This case is before the Court on Plaintiff's objections (Doc. # 12), filed under 28 U.S.C. § 636(b)(1)(C), to the Report and Recommendation of the United States Magistrate Judge (Doc. # 10).

Under 28 U.S.C. § 636(b)(1)(C), this Court, upon timely objections being made to the Magistrate Judge's Report and Recommendation, is required to make a *de novo* review of those recommendations to which an objection is made. This Court has re-examined all of the relevant evidence in this case, previously reviewed by the Magistrate Judge, and has determined that the findings of the Secretary were supported by "substantial evidence". *See Lashley v. Secretary of Health*

*and Human Services,* 708 F.2d 1048, 1053 (6th Cir.1983). Specifically, the Court concludes that the Secretary's finding, that the Plaintiff was not disabled within the meaning of the Social Security Act, is supported by substantial evidence. Accordingly, the Court hereby adopts the Report and Recommendation of the United States Magistrate Judge (Doc. # 10), that Plaintiff was not disabled as of September 30, 1983, and, therefore, not entitled to benefits, *(Id.* at 15).

Plaintiff filed an application for Disability Insurance Benefits in January, 1990, alleging disability from April 13, 1983, due to emphysema (Tr. 69–77). After Plaintiff's application was denied initially and upon reconsideration (Tr. 84–86; 97–98), a hearing was held before an Administrative Law Judge ("ALJ") (Tr. 28–68). Based upon the evidence adduced at the hearing, as well as the medical evidence in the transcript, the ALJ found that the Plaintiff was not disabled (Tr. 9–18). When the Appeals Council denied Plaintiff's request for further review (Tr. 3–4), the ALJ's decision became the final decision of the Secretary denying benefits to the Plaintiff. Upon appeal, the United States Magistrate Judge recommended that the Secretary's decision that Plaintiff was not disabled as of September 30, 1983, (the date last insured) and, therefore, not entitled to benefits under the Act be affirmed (Doc. # 10 at 15).

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation (Doc. # 10). The thrust of Plaintiff's objections challenge the basis for the Magistrate Judge's determinations. Specifically, Plaintiff first argues that the Secretary has not proven that jobs exist in significant numbers that he could perform as of his date last insured [1] (September 30, 1983) (Doc. # 12 at 1–2). Accompanying his argument, Plaintiff maintains that there is no substantial evidence to support a finding that what Dr. Michael Craig reported as a severe and disabling pulmonary impairment did not continue with similar severity from May, 1983, to the present time *(Id.* at 2). Plaintiff further argues that opinion of Dr. Craig, concerning the persistent severity of his anatomic emphysema, was entitled to great weight and it was error to reject same *(Id.).* Plaintiff next argues that the Magistrate Judge erred in affirming the Secretary's finding that he was capable of performing light work *(Id.* at 5). Plaintiff's final argument is that the ALJ erred by not making the requested inferences of an onset date (Doc. # 12 at 7). Plaintiff's arguments are meritless. Although the Magistrate Judge aptly addressed each argument in great detail (Doc. # 10 at 11–15), the Court believes that at this juncture, the heart of Plaintiff's objections center upon whether the pulmonary function studies of record are probative of Plaintiff's disability on or before September 31, 1983. For the reasons stated by the Magistrate Judge, and for those set out below, the Court holds that the pulmonary function studies in question, offered by the Plaintiff in support of his claim of disability, do not meet the requirements of the Listing of Impairments ("Listing") and, therefore, Plaintiff has not met his burden of proof on the issue of disability. A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir.1984). The claimant's specific burden is to prove that he became disabled prior to the expiration of his insured status. *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir.1990); *see also* 42 U.S.C. § 423(a) and (c).

Listing 3.00 and subsection 3.02 requires that the documentation of ventilatory function tests be accomplished in a particular manner. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00(D). For example, 3.00(D) requires, in pertinent part, that:

> [t]hese studies should be repeated after administration of a nebulized bronchodilator unless the prebronchodilator values are 80 percent or more of predicted normal values or the use of bronchodilators is contraindicated. The values in tables I and II assume that the ventilatory function

---

1. Plaintiff's argument, that the Secretary has not proven that jobs existed in significant numbers, appears to be nothing more than a bald allegation unaccompanied by meaningful substantive development. In any event, the Court's review of the record indicates that the vocational expert identified the existence of a significant number of jobs (Tr. 59–67).

studies were not performed in the presence of wheezing or other evidence of bronchospasm or, if these were present at the time of examination, that the studies were repeated after administration of a bronchodilator. Ventilatory function studies performed in the presence of bronchospasm, without use of bronchodilators, cannot be found to meet the requisite level of severity in tables I and II.

the appropriately labeled spirometric tracing showing distance per second on the abscissa and the distance per liter on the ordinate, must be incorporated in the file. The manufacturer and model number of the device used to measure and record the ventilatory function should be stated.

*Id.* The regulations set forth some additional criteria regarding the documentation of ventilatory function tests. *Id.* Section 3.02 states, in pertinent part:

3.02 **Chronic Pulmonary Insufficiency.** With:

A. Chronic obstructive pulmonary disease (due to any cause). With: Both FEV1 and MVV equal to or less than values specified in Table I corresponding to the person's height without shoes.

*Id.* at § 3.02.

The record reflects that Plaintiff had a pulmonary function test on more than one occasion. His first and only relevant reported study of record occurred on May 2, 1983 [2] (Tr. 117). That pulmonary function test measured Plaintiff's FEV1 at 0.98 and his MVV at 43 (*Id.*). However, that study did not include post-bronchodilator values; nor is there a spirometric tracing. Further, the record is devoid of evidence to establish whether the study was performed in the presence of wheezing or other evidence of bronchospasm or if these were present at the time of examination, that the studies were repeated after the administration of a bronchodilator. Moreover, there is no indication that Plaintiff's FEV1 was measured more

than once, although the Listings require that the FEV1 be the largest of three attempts. *Id.* at § 3.00(D) (the reported FEV1 should represent the largest of at least three attempts). The remaining Listing requirements were not established in the evidence before the Court. Because the results of Plaintiff's 1983 pulmonary function study did not comport with the Listing requirements it is impossible to lend them credence. It is unacceptable to evaluate the degree of Plaintiff's pulmonary disability on the basis of unreliable test results.

Plaintiff cannot mask his evidentiary shortcomings by arguing that one-time consultive medical examiner Dr. Craig is entitled to great weight (Doc. # 12 at 2) and, therefore, his opinion on the issue of Plaintiff's arguably severe and disabling pulmonary impairment is dispositive. For the reasons already pronounced by this Court, Dr. Craig's interpretation of Plaintiff's *1989* pulmonary function test is irrelevant to the Court's decision. Not only does that particular test suffer from its own Listing infirmities, but the Court also concludes that Dr. Craig's testimony—that more recent studies can be used to extrapolate back to the 1983 pulmonary function test (Tr. 194–95)—is too speculative to support a finding of disability in 1983.

■ The Court agrees with the Magistrate Judge's conclusion that the record, with respect to the opinions of the reviewing physicians as well as Plaintiff's own testimony at the hearing, supports the Secretary's finding that Plaintiff was capable of performing light work (Doc. # 10 at 15). Similarly, the Court, without repeating the cogent reasoning of the Magistrate Judge set forth in his Report and Recommendations (Doc. # 10 at 14), agrees with his conclusion that Social Security Ruling 83–20 does not become applicable until after the Secretary has found a claimant disabled.

Based on the foregoing, the Court hereby adopts the Magistrate Judge's Report and

**2.** In light of the fact that Plaintiff must have been disabled on or before September 31, 1983, in order to be eligible for the type of benefits for which he has applied (Tr. 11), the Court notes that this is the only relevant pulmonary function study. The other pulmonary function tests included in the record are simply not relevant. The Court notes, however, that even if said tests were relevant, they too suffer from assorted Listing compliance defects. In that respect, Plaintiff cannot rehabilitate the medical evidence.

Recommendation (Doc. # 10), overrules Plaintiff's objections (Doc. # 12) thereto and directs that judgment be entered in favor of Defendant–Secretary and against Plaintiff.[3]

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

## REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

MERZ, United States Magistrate Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Secretary of Health and Human Services (the "Secretary") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Secretary's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Secretary's decision. The Secretary's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Landsaw v. Secretary of HHS*, 803 F.2d 211, 213 (6th Cir.1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Secretary if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir.1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). In deciding whether the Secretary's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir.1978); *Houston v. Secretary of HHS*, 736 F.2d 365 (6th Cir.1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra*. If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of HHS*, 658 F.2d 437, 439 (6th Cir.1981).

To qualify for disability insurance benefits, a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. §§ 416(i), 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. § 423(d)(2).

The Secretary has established a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520 (1990). First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Secretary determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d) (1990). Fourth,

---

**3.** To the extent not inconsistent with this opinion, the Plaintiff's Statement of Specific Errors (Doc. # 8) is overruled.

if the claimant's impairments do not meet or equal a listed impairment, the Secretary determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Secretary to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n. 5, 107 S.Ct. 2287, 2293, n. 5, 96 L.Ed.2d 119 (1987).

The Secretary is required to consider Plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Subpart P, Appendix 1 (1991) (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.-1525(a) (1991). Thus, if Plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Secretary renders a finding of disability without consideration of Plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d) (1991); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 528 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. If Plaintiff's impairment or combination of impairments is medically equivalent to one in the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d) (1990). To determine medical equivalence, the Secretary compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a) (1990). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(B) (1990).

If Plaintiff's alleged impairment is not listed, the Secretary will decide medical equivalence based on the listed impairment that is most similar to the alleged impairment. 20 C.F.R. § 404.1526(a) (1990). If Plaintiff has more than one impairment, and none of them meet or equal a listed impairment, the Secretary will determine whether the combination of impairments is medically equivalent to any listed impairment. *Id.*

Plaintiff filed an application for SSD in January, 1990, alleging disability from April 13, 1983, due to emphysema. (Tr. 69–7). Plaintiff's application was denied initially and on reconsideration. (Tr. 84–86; 97–98). After a hearing before Administrative Law Judge Lawrence Shearer, the ALJ found Plaintiff was not disabled. (Tr. 9–18). The Appeals Council denied Plaintiff's request for review, (Tr. 3–4), and Judge Shearer's decision became the final decision of the Secretary.

In concluding that Plaintiff was not disabled, Judge Shearer made the following relevant findings:

1. Plaintiff met the insured status requirements of the Act through September 30, 1983. (Tr. 15, finding 1).

2. As of his date last insured, Plaintiff had the following medically determinable conditions: chronic obstructive pulmonary disease. *Id,* finding 3.

3. As of his date last insured, Plaintiff was a younger individual, with a limited education, a history of semi-skilled work at the medium exertional level, and had the exertional capacity for at least light work. (Tr. 16, finding 6).

4. Based on the testimony of a vocational expert, Plaintiff had skills transferable to skilled, semi-skilled jobs at a lower exertional level than his customary work. *Id.,* finding 7.

Judge Shearer then applied section 202.19 of the Grid and concluded that Plaintiff was not disabled and therefore not entitled to benefits under the Act. *Id.,* findings 8 and 9.

Plaintiff was hospitalized as follows:

April 29–May 25, 1983—admitted for treatment of acute and chronic alcoholism and alcohol withdrawal syndrome; found to have chronic obstructive pulmonary disease; pulmonary function study indicated the presence of severe ventilatory impairment which is obstructive in nature; treated with intermit-

tent positive pressure 4 times a day and he improved; laboratory tests consistent with alcoholic hepatitis; showed an acceptable improvement and was discharged. (Tr. 107–19).

March 8–11, 1987—admitted for evaluation and treatment of exacerbation of COPD; in severe respiratory distress on admission; chest x-ray and EKG showed changes consistent with COPD; condition improved gradually, activity was increased and as soon as his condition became stable, he was discharged. (Tr. 121–25).

April 5–10, 1988—admitted for evaluation and re-treatment of recurrent COPD and to rule out pneumonia; on admission was complaining of severe shortness of breath, wheezing, and lethargy; chest x-ray showed extensive chronic changes; condition improved with treatment; discharge diagnoses: exacerbation of COPD, bronchitis, atrial flutter. (Tr. 126–31).

October 14–19, 1988—admitted for evaluation and treatment of severe COPD; chest x-ray showed chronic changes; condition improved gradually; at the time of discharge, he was in good condition. (Tr. 132–34).

November 5–December 14, 1989—admitted for evaluation and treatment of severe exacerbation of COPD; chest x-ray showed severe obstructive lung disease with hyperinflation, interstitial fibrosis and some accentuation of the basilar markings, possible pneumonia; pulmonary function study showed severe obstructive disease; condition initially improved slightly so he was out on oral medication and he almost immediately began to deteriorate again; treatment was then changed; suddenly, he decided to go home and despite all efforts to keep him and complete his treatment, he decided to leave with or without approval. (Tr. 135–54).

A reviewing physician reported on March 26, 1990, as follows: residual functional capacity at date last insured would be light work; post insured pulmonary function studies show data meeting the Listing; able to lift and/or carry up to 20 pounds and up to 10 pounds frequently; able to stand and/or walk about 6 hours out of an 8 hour workday, and sit about 6 hours out of an 8 hour workday;

avoid all exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 155–63).

Treating physician Dr. Samkari reported on May 14, 1990, as follows: first seen by me in April, 1983; since that time, has had a severe case of COPD; all pulmonary function tests, chest x-rays, and blood gases done correlated with clinical condition; over the last two years, had to be hospitalized frequently for severe exacerbation of COPD; at the present time, is completely disabled; is fatigued and short of breath on minimal exertion; has rales, wheezing, rhonchi, prolonged respiration, increased A–P diameter; has mild cyanosis except during exacerbation then it is severe; is completely disabled from any kind of employment. (Tr. 164–65).

The record contains Dr. Samkari's office notes dated June 27, 1983, to January 5, 1990. (Tr. 166–76). These notes reflect the following:

6/27/83—left the Care Unit a month ago; doing relatively well; still has slight SOB.

8/8/83—doing very well breathing-wise; exam showed clear lungs; occasional migraine attacks.

10/3/83—doing relatively well; one migraine attack since last visit.

4/18/84—complaining of arthritis pain especially in right shoulder.

7/16/85—complaining of SOB related to his COPD; was not using his medication for the last month and is still smoking; decreased breathing sounds and prolonged expiration; slight wheezing and a few rhonchi.

11/25/85—severe COPD and a viral URI; few rhonchi in the lung fields.

8/4/[ ]—doing relatively well; complains of intermittent pain in the right knee over the last two months; clear lungs.

2/5/87—known to have COPD; apparently not doing well recently; did not show up in the office for over a year; has prolonged expiration, mild wheezing, and a few rhonchi in both lung fields.

2/18/87—complaining of cough, slight shortness of breath, sore throat; few rhonchi in the lungs.

3/19/87—left the hospital about a week ago after he was treated for exacerbation of COPD; doing much better; back to normal; showed few rhonchi and prolonged expiration; otherwise no wheezing or rales.

4/5/88—complaining of increased shortness of breath and wheezing; is in significant difficulty; has wheezing and rhonchi in both lung fields; was advised hospital admission but refused.

4/15/88—is doing much better; left the hospital after he was treated for exacerbation of COPD; lungs clear; is in good condition.

7/5/88—complaining of vague pain in left side of neck; examination showed no abnormalities.

7/30/88—complaining of some wheezing and shortness of breath; has mild case of exacerbation of COPD.

8/25/88—doing better until 2 days ago; now is congested and has some shortness of breath.

10/4/88—complaining of aches, slight sore throat; still has regular cough and expectoration because of his COPD; showed few scattered rhonchi in the lungs; no wheezing.

10/10/88—still complaining of shortness of breath; has increased A–P diameter with prolonged expiration; hardly getting any air; still smoking; advised to stop smoking many times.

1/18/89—slight cough, sore throat; same symptoms of his COPD; lungs clear.

4/14/89—complaining of increased tightness and wheezing in the chest for the last few days; lungs have mild wheezing and few rhonchi; early exacerbation of COPD.

5/19/89—increased shortness of breath, wheezing; sounds tight with rhonchi and wheezing in both lung fields; no other findings.

6/16/89—still smoking; still coughing; still has occasional wheezing; looks like early bronchitis; decreased breathing sounds in both lung fields; prolonged expiration and increased A–P diameter.

7/11/89—complaining of increasing SOB, tightness in chest, wheezing; heat aggravating condition; has very little cough.

12/5/89—complaining of wheezing, shortness of breath over the last 24 hours; is in no acute distress; bilateral wheezing.

1/5/90—left hospital a couple of weeks ago; has advanced COPD; showed increased diameter in the chest and prolonged expiration; few scattered rhonchi; has advanced COPD; long term prognosis poor.

Reviewing physician Dr. Chung reported on May 15, 1990, as follows: [as of date last insured] able to lift and/or carry up to 20 pounds and up to 10 pounds frequently; able to stand and/or walk for about 6 hours out of an 8 hour workday; able to sit for about 6 hours out of an 8 hour workday; the 5/2/83 pulmonary function study shows severe impairment but no post bronchodilator study or tracing; avoid all exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 177–86).

Dr. Michael Craig reported on January 3, 1991, as follows: I have reviewed the material forwarded to me; in addition, I have reviewed the pulmonary function studies, and the actual x-rays; these are primarily from 1989, and 1990; pulmonary function studies revealed severe obstructive lung disease in May, 1983; studies done in 1987, and 1988, after bronchodilator showed essentially no change in the FEV1; review of current chest x-rays shows significant hyperinflation and hyperlucency of the lung fields; the diaphragms are flattened; appears to be small bullae scattered throughout the upper lung zones; these findings are all compatible with anatomic emphysema; copy of an x-ray report dated 3/8/87, indicates that findings are similar to films taken in April, 1983; these findings are consistent with what one can see with anatomic emphysema; there is no reason to believe that pulmonary function studies done after bronchodilator would have been any different in 1983, than they were in 1987, or 1988; the presence of anatomic emphysema often reflects fixed disease that will not respond to bronchodilator; after reviewing pulmonary function studies and x-rays, I feel, within the realm of reasonable medical probability, that if post-bronchodilator values had been recorded on May 2, 1983, they would likely have been very similar to those

reported in February of 1987, and October of 1988. (Tr. 194–95).[1]

Plaintiff testified at the administrative hearing as follows: hospitalized in April, 1983, for primary problem of alcoholism, (Tr. 37–38); the next time I was hospitalized was probably 1987, (Tr. 39); started using oxygen on a regular basis last December, (Tr. 41); I have no idea how long I could stand in September, 1983, but I don't think that I could stand for 2 hours at a time, (Tr. 42); one thing I've not had any problem with is sitting, (Tr. 43); [in September, 1983] I could walk maybe a couple of blocks, (Id.), and lift maybe 25, 30 pounds, (Tr. 44); during September, 1983, I could possibly have done a job sitting at a table assembling items or inspecting items, (Tr. 46); I probably would have been able to be a cashier such as at a gas station taking credit cards or the money and not having to lift much, (Id.); I probably would have been able to be a light delivery truck driver if I had to walk just short distances, (Tr. 46–47); I probably could have washed the dishes, do housework like sweeping or mopping or vacuuming, go grocery shopping, (Tr. 48); in September, 1983, I was able to go fishing, (Tr. 50); I smoke about a half a pack of cigarettes a day, (Tr. 51); I haven't had a drink since 1983, (Id.); since 1983, there has been a gradual change in my condition, (Tr. 52); in 1983, I was smoking a couple of packs a day, (Id.).

The VE testified at the administrative hearing that Plaintiff's past relevant work was medium and skilled, medium and unskilled, and medium and semi-skilled. (Tr. 61). The VE also testified that any skills that Plaintiff would have that would be transferable to other jobs would be driving skills and that those skills would be transferable to light delivery type driving. (Id.) Judge Shearer then propounded the following hypothetical question to the VE:

... I would like for you to assume an individual of the age, education and background and experience of the claimant as of September 30, 1983. That individual at

that time would have been 49 years of age, would have had a somewhat limited education, would be able to stand at least an hour, sit for at least two hours and these could be done alternately for a full eight hour day, and what I mean by that, is an individual could stand for up to a maximum of an hour, take a brief break, sit down again, and then stand for another hour, or changing the same position in sitting, would be able to walk at least two blocks, possibly more, lift and carry at least 20 pounds, perhaps up to 30 pounds occasionally, and at least 10 pounds frequently. Would such an individual be able to do the job as a, as a light delivery truck driver? (Tr. 62).

In response, the VE testified that Plaintiff would be able to perform that job and that 800 existed in the economy in September, 1983. Id.

Judge Shearer then asked the VE if Plaintiff would be able to perform the job of escort driver to which the VE responded that he could and that 250 of those jobs existed in 1983. (Tr. 63). The VE also testified that Plaintiff would have been able to perform the job of domestic chauffeur at the light level, that 75 of those jobs existed and that Plaintiff would have been able to perform the job of commercial chauffeur and that 250 of those jobs existed. Id. The VE testified further that there were other driving jobs and unskilled positions at the light and sedentary levels that Plaintiff could perform and that there were 14,000 of those jobs in the economy. (Tr. 64).

On cross-examination by Plaintiff's counsel, the VE testified that the driving jobs did not exist in a clean environment. (Tr. 65). The VE also testified that more than 2,000 jobs existed that were in a clean air environment. (Tr. 66).

In his Statement of Specific Errors, (Doc. 8), Plaintiff argues that the Secretary erred in:

1. Refusing to make requested inferences of an onset date from the cogent medical

---

1. The Court notes that Dr. Craig signed the pulmonary function study report of December 11, 1989. That pulmonary function study was performed during Plaintiff's November 5–December 14, 1989, hospitalization. Although Dr. Craig signed the report, thereby presumably interpreting the results, Plaintiff was "tested by: R. Martin." (See, Tr. 144–45).

and other evidence of record describing the history and symptomatology of the disease process that formed the basis of his impairment.

2. Concluding that the pulmonary function study performed on May 2, 1983, could not form the basis of a Listing-level pulmonary impairment. Post-bronchodilator values are not mandated by Listing 3.00 and Subsection 3.02 of that Listing for chronic obstructive pulmonary disease.

3. Impermissibly substituting his own inexpert medical judgment for the opinions of competent medical experts of record.

4. Concluding that his impairments, as documented by the pulmonary function studies on May 2, 1983, were not continuously and equally severe up to and including the date of the hearing.

At the outset, this Court notes that Plaintiff must establish his disability within the meaning of the Act prior to the expiration of his insured status. *See, Richardson v. Heckler,* 750 F.2d 506 (6th Cir.1984).

If Plaintiff met the Listings prior to the expiration of his insured status, the inquiry ends because a finding of "disabled" is required. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The Court will therefore address that issue first.

Listing 3.02 reads in relevant part:

3.02 *Chronic Pulmonary Insufficiency.* With:

A. Chronic obstructive pulmonary disease (due to any cause). With: Both FEV1 and MVV equal to or less than values specified in Table I corresponding to the person's height without shoes.

.    .    .    .    .

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Sec. 3.02(A).

The record shows that Plaintiff is 71 inches tall. (Tr. 117). Table I to Listing 3.02(A) shows that to meet that Listing, a person 71 inches tall must have a FEV1 equal to or less than 1.5 and a MVV equal to or less than 60.

The pulmonary function study at issue is the one performed on May 2, 1983, during Plaintiff's April 29–May 25, 1983, hospitalization. (Tr. 117–18). That pulmonary function study measured Plaintiff's FEV1 at 0.98, and his MVV at 43. *Id.* This study does not include post-bronchodilator values, nor is there a spirometric tracing. *Id.*

The Secretary argues that in spite of these values, Plaintiff did not meet the Listing. The Secretary argues that the introductory comments of Listing 3.00 show that the taking of a post-bronchodilator study is required so that he (the Secretary) may have complete and accurate information regarding the severity of the pulmonary disorder and whether it is reversible by bronchodilators. The Secretary also argues that Plaintiff's FEV1 was measured only once and the Listing requires that the FEV1 be the largest of three attempts. Finally, the Secretary argues that none of Plaintiff's pulmonary function study reports include any spirometric tracings and required by the Listing.

Section 3.00(D) of the Listings reads in relevant part:

D. *Documentation of ventilatory function tests.* The results of ventilatory function studies for evaluation under Tables I and II should be expressed in liters or liters per minute (BTPS). The reported ... FEV1 should represent the largest of at least three attempts. One satisfactory ... MVV is sufficient.... These studies *should* be repeated after administration of a nebulized bronchodilator unless prebronchodilator values are 80 percent or more of predicted normal values or the use of bronchodilators is contraindicated. The values in tables I and II assume that the ventilatory function studies were not performed in the presence of bronchospasm or, if these were present at the time of the examination, that the studies were repeated after administration of a bronchodilator. Ventilatory function studies performed in the presence of bronchospasm, without the use of bronchodilators, cannot be found to meet the requisite level of severity in tables I and II.

The appropriately labeled spirometric tracings, showing distance per second on the abscissa and the distance per liter on the

ordinate, *must* be incorporated in the file. . . .

20 C.F.R. Part 404, Subpt. P, App. 1, Sec. 3.00(D) (emphasis supplied).

First, this Court concludes that this Regulation does not require postbronchodilator testing except when the pre-bronchodilator test has been performed in the presence of wheezing or other evidence of bronchospasm. This conclusion is supported by the Secretary's use of the phrase "should be" when referring to repeating the test after the administration of bronchodilators. In the context of this Regulation, "should be" does not equate to "shall be" or "must". If the Secretary intended to require that a post-bronchodilator test be performed (in the absence of symptoms of bronchospasms), then he should have indicated that by use of the phrase "shall be" or "must be" as he did in the same section of the Regulation with respect to requiring the appropriately labeled spirometric tracing, i.e., "The appropriately labeled spirometric tracing ... *must be* incorporated in the file."

There is nothing in Plaintiff's hospital record nor in the pulmonary function study report which indicates that at the time the test was performed Plaintiff exhibited any symptoms of bronchospasms which would require post-bronchodilator values to be obtained in order to comply with the Regulation and on order to have a valid pulmonary function study for purposes of determining whether Plaintiff met Listing 3.02(A). (*See,* Tr. 107–20). However, that is not the end of the Court's analysis.

As noted above, the applicable Regulation *requires* that the appropriately labeled spirometric tracing be incorporated in the file. Unfortunately, the May, 1983, pulmonary function study does not include that tracing. Accordingly, Plaintiff's May, 1983, pulmonary function study does not meet the required documentary standard of the Listing and the Secretary had an adequate basis for rejecting that study.

In support of his first Specific Error, Plaintiff argues that an application of SSR 83–20 requires a conclusion that Plaintiff was disabled as of the date last insured.

SSR 83–20 states the policy and describes the relevant evidence to be considered when establishing the onset date of disability under the Act. However, SSR 83–20 involves the determination of a claimant's disability onset date once the decisionmaker has determined that the claimant is disabled: "In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83–20 at 109. Stated differently, SSR 83–20 does not become applicable until after the Secretary has found an individual disabled. Accordingly, it is not applicable in this case.

In support of several of his Specific Errors, Plaintiff argues that the Secretary impermissibly rejected the opinion of Dr. Craig. This Court disagrees.

First, it is arguable as to whether Dr. Craig ever examined Plaintiff. (*See,* n. 1, *supra*). Second, Dr. Craig's conclusions with respect to Plaintiff's disability are not supported by the other evidence of record. The transcript shows that subsequent to his April, 1983, hospitalization, which is the earliest medical evidence in the transcript, Plaintiff's treating physician, Dr. Samkari, documented that Plaintiff had "slight" shortness of breath, (June 27, 1983), was "doing very well breathing-wise" (August 8, 1983), and was "doing relatively well" (October 3, 1983). Further, Plaintiff apparently did not seek treatment from October, 1983, to April, 1984, (at which time he complained of arthritis) and from April, 1984, to July, 1985 (at which time he was short of breath, had not been using his medication, and was still smoking). Although Dr. Samkari opined that Plaintiff was disabled, he did not do so until May, 1990. Finally, Dr. Craig's opinion with respect to Plaintiff's impairment is inconsistent with Plaintiff's own testimony at the administrative hearing. Under these circumstances, the Secretary had an adequate basis for rejecting Dr. Craig's opinion.

Finally, this Court notes that the only specific evidence with respect to Plaintiff's residual functional capacity as of his date last insured are the opinions of the reviewing physicians as well as Plaintiff's testimony at the hearing. This evidence supports the Secretary's finding that Plaintiff was capable of performing light work. Further, treating

physician Dr. Samkari's office notes also support that conclusion. Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker*, 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established.... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of H.H.S.*, 802 F.2d 839, 840 (6th Cir.1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). The Secretary's decision in this case is supported by such evidence.

It is therefore recommended that the Secretary's decision that Plaintiff was not disabled as of September 30, 1983, the date last insured, and therefore not entitled to benefits under the Act be affirmed.

February 28, 1992.