**David E. PAPENDICK, M.D.,
Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of the United States Department of Health and Human Services, in his official capacity, Defendant–Appellee.**

No. 91–1902.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1992.

Decided July 17, 1992.

Kenneth J. Haber, Rockville, Md. (argued), for plaintiff-appellant.

Susan M. Knepel (argued), Office of U.S. Atty., Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge, COFFEY, and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

In May 1986, the Wisconsin Peer Review Organization (WIPRO)[1] notified David E. Papendick that after routine review procedures, it determined that he grossly and flagrantly violated the statutory obligations imposed on physicians who provide medical services under Medicare. WIPRO informed Papendick that he had thirty days within which to submit additional information that would modify its position, or he could request a meeting with WIPRO to review and discuss specific cases. This action triggered an administrative review process, of which Papendick has taken full advantage. We are the fifth adjudicative body to consider the issues WIPRO raised.

Papendick responded by sending a letter to WIPRO asking that it review documents

---

1. WIPRO is a peer review organization authorized to review the professional activities of physicians and other health care practitioners who render services under the Medicare program. *See* 42 U.S.C. § 1320c–3(a)(1). As its name implies, a peer review organization is composed of, or has available to it, a substantial number of licensed medical doctors or osteopaths who are representative of the practicing physicians in the area. 42 U.S.C. § 1320c–1(1)(A).

he submitted to a review organization several years earlier that dealt with other cases. Regarding the specific cases WIPRO raised, Papendick responded that WIPRO's accusations were a gross misrepresentation of the medical care he provided, but he declined the opportunity to meet with WIPRO. Thereafter WIPRO notified Papendick that it had recommended to the Department of Health and Human Services (HHS) that he be excluded from the Medicare program for a period of twelve years, and that he had thirty days to submit additional information to HHS.

Papendick then submitted a letter to HHS's Office of the Inspector General (OIG), setting forth his reasons why he should not be excluded from the Medicare program. On December 23, 1986, after a full review of all the material before it, OIG found that Papendick grossly and flagrantly violated his statutory obligation to provide medical care that meets professionally recognized standards in his treatment of two patients, designated in the record as H.D. and L.M. The OIG advised Papendick that it was excluding him from the Medicare program for two years. As a result of that action, Papendick requested an administrative hearing.

The matter was heard before an Administrative Law Judge (ALJ) on February 16, 1987. The parties stipulated to the issues: whether Papendick grossly and flagrantly violated provisions of section 1156 of the Social Security Act, 42 U.S.C. § 1320c–5(a),[2] and if so, what sanction would be appropriate. In resolving these issues, the ALJ would be required to determine the appropriate standard of professional care, and whether Papendick was willing and able to comply substantially with his section 1156 obligations. The ALJ advised the

parties that if they had either procedural or constitutional objections, they could raise them in their closing briefs in order to preserve them for appeal. On December 28, 1987, employing a statewide standard of care, the ALJ found that Papendick grossly and flagrantly violated professionally recognized medical standards in the care of both H.D. and L.M. He also found that Papendick demonstrated both an unwillingness and an inability to comply with his statutory obligations. Consequently, he upheld Papendick's two-year exclusion from the Medicare program.

Dissatisfied with that result, Papendick filed a request for review to the Social Security Administration's Appeals Council. In the meantime, on February 7, 1989, he was reinstated to the Medicare program.[3] At the expiration of his two-year exclusion, the Inspector General determined that there was reasonable assurance that the problems that led to Papendick's exclusion would not reoccur and reinstated him. Nonetheless, on June 22, 1989, after reviewing the entire record, the Appeals Council affirmed the ALJ.

So Papendick took the matter to the United States District Court, as provided in 42 U.S.C. § 405(g). On August 18, 1989, he filed a complaint against defendant Sullivan ("the Secretary") seeking review of his exclusion from the Medicare program. Additionally, he alleged the existence of certain collateral issues not cognizable in the administrative process. He then made discovery requests of the Secretary under FED.R.CIV.P. 36 for admissions, and under FED.R.CIV.P. 34 for the production of documents. In response, the Secretary moved for a protective order. After reviewing the parties memoranda, the district court

---

**2.** The section requires, in pertinent part, that a health care practitioner who provides services under the Medicare program shall assure that those services

    (1) will be provided economically and only when, and to the extent, medically necessary;

    (2) will be of a quality which meets professionally recognized standards of health care; and

    (3) will be supported by evidence of medical necessity and quality in such form and fashion and at such time as may reasonably

be required by a reviewing peer review organization in the exercise of its duties and responsibilities.

42 U.S.C. § 1320c–5(a).

**3.** Even though he is no longer excluded from the Medicare program, Papendick continues to press his appeal, claiming that exclusion has damaged his reputation and that if he is successful, he is entitled to retroactive reimbursement under the Act.

granted the Secretary a protective order on September 10, 1990. The parties then filed cross-motions, Papendick for a reversal or a remand, the Secretary for summary judgment. After both motions were fully briefed, the district court denied Papendick's motion and granted summary judgment in the Secretary's favor.

Papendick filed this appeal on April 19, 1991. Although his brief is not a model of clarity, we believe we understand his various arguments to: challenge the record evidence supporting the ALJ's decision, assert that the ALJ applied an incorrect standard of professional care, claim that the district court abused its discretion when it granted the Secretary's motion for a protective order, and claim that he was denied due process. He also argues that the case should be remanded to consider new evidence. Because none of these arguments are meritorious, we affirm the district court.

■ Papendick's initial argument invites us to reconsider and reweigh the evidence before the ALJ. Because that is not the function of appellate review, we decline. We are to determine only if there is substantial evidence in the record to support the ALJ's decision. *See* 42 U.S.C. § 405(g). "Substantial evidence may be less than a preponderance of the evidence." *Freeman United Coal Mining Co. v. Stone*, 957 F.2d 360, 362 (7th Cir.1992). Further, "[t]he existence of an evidentiary dispute, in and of itself, does not present a ground for reversing the ALJ's decision to credit one particular version of the events over another." *Herr v. Sullivan*, 912 F.2d 178, 181 n. 4 (7th Cir.1990).

■ We are convinced that there is not only substantial, but abundant evidence in the record to support the ALJ's decision that Papendick grossly and flagrantly violated his section 1156 obligations. First, the record as a whole supports the finding that Papendick failed to provide H.D. with the care required under section 1156 by failing to recognize the severity and deteriorating quality of his cardiac condition, failing to administer tests that would have disclosed his deteriorating condition, and failing to obtain an outside independent consultation, all of which placed H.D. at greatly increased risk of harm. As to L.M., the record shows that Papendick again failed to obtain an independent expert cardiac consultation about her condition, and in fact, considered her terminal, making a "no code" notation on her chart even though neither she nor her family consented to the notation, all of which also placed her in imminent danger and greatly increased risk of death.[4]

■ The ALJ's determination that Papendick was unwilling and unable to comply substantially with his section 1156 obligations similarly is supported by substantial evidence. The record clearly discloses that Papendick, in his testimony before the ALJ, failed to recognize or appreciate that the quality of treatment he rendered to H.D. and L.M. placed them at greatly increased risk of death or further harm. Indeed, he testified that he would have done nothing differently, and that the only reason he would seek outside expert consultation now was because the hospital at which he practiced no longer functioned as a full service hospital. This evidence easily sup-

---

**4.** In a related argument, Papendick claims the ALJ's consideration of the "no code" notation on L.M.'s chart went beyond the stipulated issues, violating his due process right to be notified of the charges against him. This argument is specious because it completely ignores the ALJ's observation that

> the "no code" factor had not been specifically charged against the Petitioner by WIPRO or OIG, but that factor nevertheless must be considered as part of the Petitioner's failure to obtain a consultation, illustrative of his state of mind in failing to secure additional cardiological workups (echocardiograms and cathet-

erizations), and further *goes to the issue of gross and flagrant*. The expert witnesses called to testify, Drs. Moulton and Fergus, both concurred that based on the lack of consultation with the patient and her family *a significant gross and flagrant violation had occurred with the first "no code" entry.*

Decision of the ALJ, Administrative Record at 946 (emphasis ours). It is clear that the ALJ considered the "no code" entry not as a separate charge against Papendick, but as it related to whether he grossly and flagrantly violated his section 1156 obligations in his care of L.M. This was entirely proper.

ports the ALJ's decision and, consequently, Papendick's two-year exclusion from the Medicare program.

■ Papendick further argues that the ALJ applied an incorrect standard of professional care when he concluded that he violated his section 1156 obligations. The ALJ employed a statewide standard, which was the standard WIPRO used as well. The regulations promulgated for peer review under the Social Security Act require WIPRO to "determine whether the quality of the services meets professionally recognized standards of health care." 42 C.F.R. § 466.71(a)(2). The regulatory preamble to those regulations states, in pertinent part, that

> In rendering medical judgments, the [peer review organizations] must apply, as principal points of evaluation and review, professionally developed norms of care, diagnosis and treatment based on typical patterns or practice *within the geographic area served by the organization.*

50 Fed.Reg. 15337 (Apr. 17, 1985) (emphasis ours). As the ALJ noted, the State of Wisconsin is the geographic area WIPRO serves. The ALJ, therefore, did not err in applying a statewide standard of professional care.

■ Next, Papendick argues that the district court abused its discretion when it granted the Secretary's motion for a protective order after Papendick served the Secretary with discovery requests. Trial courts are vested with broad discretion in ruling on discovery issues, and will be reversed only on a clear showing that the party seeking discovery will suffer actual and substantial prejudice if discovery is denied. *Travelers Ins. Co. v. Transport Ins. Co.,* 846 F.2d 1048, 1053 (7th Cir.1988).

Papendick fails to show how entry of the protective order, which limited the district court's review strictly to the administrative record before it, actually and substantially prejudiced him. The district court's jurisdiction to review Papendick's exclusion from the Medicare program was pursuant to 42 U.S.C. § 405(g), which is limited to a review of the pleadings and the transcript of the administrative record. *See* 42 U.S.C. § 405(g). It is clear from the statute that a district court may not consider evidence outside the certified record. But that is what Papendick's discovery requests sought. The court, therefore, did not abuse its discretion.

■ Papendick also argues that his due process rights were violated because of defects he claims occurred at the administrative hearing and because of WIPRO's alleged conflicts of interest. The ALJ recognized that he had no jurisdiction to review constitutional claims, and so notified both parties: "the parties may ... insert objections on procedural/constitutional issues in their closing briefs, in order to preserve them for appeal." Administrative Record at 1281. Nevertheless, Papendick did not raise his due process claims in his appeal to the Appeals Council. Our rule is that these issues must first be raised administratively. *Weyerhaeuser Co. v. Marshall,* 592 F.2d 373, 376 (7th Cir.1979). As did the district court, we decline to consider issues not considered by the Appeals Council.

■ Finally, Papendick argues that we should remand to the district court, with instructions to remand to the ALJ, to consider new evidence. The new evidence Papendick wishes to offer is the Inspector General's notification that, after having determined that the basis for Papendick's two-year exclusion no longer existed, and having received reasonable assurance that the problems would not reoccur, Papendick was reinstated to the Medicare program.

A remand under 42 U.S.C. § 405(g) for consideration of new evidence is appropriate only when the new evidence is material to the "condition during the relevant time period encompassed by the [exclusion] under review, and there is good cause for not introducing the evidence during the administrative proceedings." *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir.1989). The relevant time period here is the period of time Papendick treated H.D. and L.M. At the conclusion of his review of his treatment of those two patients, the ALJ deter-

mined that Papendick was unwilling and unable to comply substantially with his section 1156 obligations. The Inspector General determined, on review of Papendick's reinstatement petition, that he was now reasonably assured that Papendick would comply with his statutory obligations. Papendick's assurances, and the Inspector General's determination, both post-date the relevant time period and are, therefore, not material.

For the foregoing reasons, the decision of the district court is

AFFIRMED.