Verle J. BAILEY, Plaintiff–Appellant,

v.

Shirley CHATER, Commissioner of Social Security, Defendant–Appellee.

No. 94–2241.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1995.

Decided Oct. 18, 1995.

---

**ARGUED:** Margaret Cuthbert Broaddus, Cuthbert Law Offices, P.C., Petersburg, Virginia, for Appellant. Margaret J. Krecke, Assistant Regional Counsel, Office of the General Counsel, Department of Health & Human Services, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Charlotte Hardnett, Chief Counsel, Region III, James C. Newman, Division Chief, Office of the General Counsel, Department of Health & Human Services, Philadelphia, Pennsylvania; Helen F. Fahey, United States Attorney, Debra J. Prillaman, Assistant United States Attorney, Richmond, Virginia, for Appellee.

Before HALL and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded with instructions by published opinion. Judge HALL wrote the opinion, in which Judge WILLIAMS and Senior Judge PHILLIPS joined.

## OPINION

K.K. HALL, Circuit Judge:

The disability onset provisions of Social Security Ruling 83–20 are at issue in this appeal from the district court's grant of summary judgment to the Commissioner. The claimant, Verle Bailey, filed this lawsuit after the Appeals Council denied her request for review of the ALJ's decision to award benefits, but only as of December 4, 1991, two years beyond the date on which Bailey asserts that she became disabled.

Because the onset date selected by the ALJ was not supported by substantial evidence, we conclude that the district court's judgment must be vacated and the case remanded. We instruct the district court to further remand the case to the Commissioner so that the ALJ may, consistent with the dictates of SSR 83–20, obtain the assistance of a medical advisor to determine the onset date of Bailey's disability.

I.

In November 1989, Bailey was working as a certified nurse assistant at a training center in Petersburg, Virginia, providing care for retarded children. On November 28, 1989, Bailey was hospitalized for diabetic ketoacidosis; she remained in the hospital until December 11.[1]

Bailey never again performed any substantial work. About a year after her hospitalization, she tried to become recertified to return to her old job, but, after about three weeks, she could not continue to sit through the classes because of anxiety and back pain. Eventually her job benefits ran out, forcing her to pay the full premium to maintain her health insurance. In 1991, Bailey twice took minimum-wage jobs assisting the sick and elderly, but she found that she could work no longer than three weeks either time.

Bailey applied for Disability Insurance Benefits on May 14, 1990, alleging that she had been disabled since November 30, 1989,

---

1. According to the Merck Manual of Diagnosis and Therapy (15th ed.1987), blood glucose levels in a normal adult are less than 115 milligrams/deciliter; diabetes mellitus is diagnosed when the level rises above 140 mg/dL. Bailey's level upon arriving at the hospital was 1,368 mg/dL. The diabetes had caused Bailey to become semi-comatose; she was very lethargic and confused, and she was immediately placed in the Intensive Care Unit.

because of diabetes, high blood pressure, and poor vision. Her claim was turned down. She reapplied on January 22, 1991, asserting that she was disabled because of high blood pressure, blurred vision, glaucoma, diabetes, and allergies. This application was also denied, as was her request for reconsideration. In the course of processing the applications, Bailey's medical records were twice referred to the appropriate state agency for review; the state's evaluators concluded both times that, because her ailments were controlled by medication, Bailey was not disabled.

After her request for reconsideration of the second application was denied, Bailey was granted an administrative hearing. The hearing took place on January 29, 1992, and Bailey's attorney delivered a short opening statement:

> We would ask that you find Ms. Bailey to be disabled ... by a combination of diabetes, glaucoma, ... high blood pressure ... [a]nd arthritis.... [After] the sudden onset of her problem with diabetes, she was unable to [return to work] because of constant fatigue, blurred vision, and dizziness and depression. She, additionally, now suffers from pain in her back and knee.

Bailey then testified about all the problems her attorney mentioned. She mentioned that she had difficulty performing routine household chores, and said that she had experienced "terrible headaches." In response to a question from the ALJ regarding her memory, Bailey answered, "I don't remember like I used to."

Bailey's husband, Tate, also testified. He corroborated much of his wife's anecdotal evidence concerning her diminished physical capabilities. Tate was asked whether he had noticed problems with his wife's memory:

> TATE: Yes. She really—she don't know what she really—I mean, when I met her at first, she was [a] very sharp person, you know, but her memory is nothing—
>
> Q: Had you had problems with the bills being paid?
>
> TATE: Yes, yes, because—I mean coming up to Christmas, I thought everything was—but then she's kind of a private person, you know.... I mean, just a bunch

of bills, you know, running behind, ready to have—

> Q: She'd just forgotten about them?
>
> TATE: Had forgotten about them....

The ALJ ordered cardiac, ophthalmologic, and psychological consultative examinations; these took place in late April and early May 1992.

Dr. Martha Griswold, an internal medicine specialist, reported that Bailey had complained of chest pain. Griswold surmised that her subject's chest pain was probably not related to a heart condition, but could have arisen from long-standing hypertension, which the doctor described as "severe and poorly controlled." Dr. Griswold also noted Bailey's decreased ability to walk and stand because of her back problem; the doctor opined that Bailey could lift no more than five pounds and could stand no longer than thirty minutes of an eight-hour work day. Significantly, Dr. Griswold reported that "[h]er mental status is slightly strange, in that she seems to be sort of out of it; and when I tell her to do something, she is very slow in responding. However, I think this is possibly related to perhaps over-medication with some tranquilizers."

The ophthalmologist diagnosed glaucoma, "apparently currently ... not well controlled." He suspected that Bailey had not been regularly using her prescribed eye drops.

The psychologist, Dr. Leigh Hagan, reported the following:

> She seemed a bit confused. She did not deal well with a lot of questions, one right after another.... She could name a few past presidents spontaneously.... She has trouble incorporating new information, particularly if it involves any details of complex or novel material. She could not exercise passive recall of three objects after 5 minutes.... She could count on her fingers from 1 to 20 and knew the letters of the alphabet but was very slow and was not at all competitive on even this simple task of recall....

and

> Depression is the overriding feature here. [Bailey stated that] "I used to be good at

this (problem-solving and recall)." "I'm not crazy. I used to be like a computer in the office. This is so frustrating." ... She has feelings of worthlessness because she is not competitively engaged in the work force.... The subject's [verbal] IQ scores ... would approximate the sixth percentile falling within the borderline range.... The data does not match up with the performance expected of someone who "used to operate like a computer in the office".... The cognitive performance ... must be interpreted in the context of the other disorders including pain, depression and the exertional issues.

The ALJ took additional testimony from Bailey and her husband in December 1992 (Bailey then reported an enlarged heart), and issued his findings and conclusions on March 22, 1993. The ALJ found that "[t]he medical evidence establishes that the claimant has severe hypertension, diabetes mellitus, back pain, left arm weakness, glaucoma with diminished visual fields, [and] borderline intellectual functioning and depression...." The ALJ did not find Bailey's testimony credible with regard to her musculoskeletal pain and limitations prior to December 1991, but said that "her testimony as to her other conditions and resulting limitations was credible in reflecting a deterioration in her overall functional capabilities by the time of her hearings."

The ALJ found that "when seen consultatively for physical, ophthalmological and psychological impairments in May 1992, examiners reported findings suggesting a significant deterioration in the claimant's functional capability." However, the ALJ also found that, through the end of 1991, Bailey's diabetes and high blood pressure were "well controlled" by medication, and that her glaucoma had not severely restricted her visual fields as of May 1991:

These reports, coupled with claimant's admitted ability to walk a mile a day ... and her lack of use of pain medication through 1989, 1990 and 1991, suggested ... that as of the alleged onset of disability, Ms. Bailey was not significantly restricted either exertionally or nonexertionally.[2]

The ALJ found that Bailey was disabled when she underwent the May 1992 consultative examinations. As to how far in advance of that date she first became disabled, the ALJ stated that

[g]iving the claimant the benefit of any doubt, it is concluded that at least six months prior to the May 1992 consultative examinations ... she had a combination of physical and nonexertional limitations restricting her to generally sedentary tasks ... compromised by an inability to sustain attention and concentration, to see clearly, to interact appropriately with others, or to handle more than very simple tasks. Six months prior to the May 1992 consultative examinations would be December 4, 1991.

The ALJ therefore ordered the payment of disability benefits from that date.

On May 27, 1993, Bailey filed a request for review of the ALJ's decision with the Appeals Council, alleging that the ALJ erred in failing to accept November 30, 1989, as the disability onset date. With that request, Bailey filed a letter from Dr. Edward A. Peck, a neuropsychologist. Dr. Peck's letter stated that he had reviewed the records from Bailey's 1989 hospitalization for diabetic ketoacidosis, along with the May 1992 consultative reports filed by Drs. Griswold and Hagan:

In reviewing these data, I note that the patient experienced a period of lethargy and mental confusion associated with her diabetes problem that required hospitalization.... In my professional experience as a neuropsychologist, significant medical problems such as this are very highly cor-

---

2. Bailey failed to mention any musculoskeletal pain in her initial application in May 1990. In that application, Bailey stated that she walked "at least one mile a day."

The ALJ had stated earlier in his decision that "while alleging that she had a 1984 back injury and since that time has aching back pain with limitations upon walking, bending and sitting, Ms. Bailey's own list of medications reflected

that she was not prescribed pain medication until the list she submitted dated November 16, 1992." Actually, the record reflects that, on July 20, 1989, Dr. Milton Ende gave Bailey a sample of Feldene, a drug often prescribed to alleviate arthritis pain and swelling; Bailey's medications list submitted to an eye clinic on January 10, 1992, shows that she was still taking Feldene then.

related with significant changes in cognitive function.... [I]t is my professional opinion, based on review of available records, that the patient's period of vocational disability coincided with her admission date of November 28, 1989.... Certainly Dr. Hagan's data suggests that there has been a decline in function when one considers that this lady was able to work in the nursing field prior to becoming significantly ill.

The Appeals Council denied Bailey's request for review on September 16, 1993, stating in a letter to her that it had "considered Dr. Peck's opinion regarding the date he believes that disability began, but finds that there is no objective evidence in the record, during the period prior to December 4, 1991, to support his conclusion."

Bailey filed suit in the district court on November 19, 1993. The case was referred to a magistrate, and both sides moved for summary judgment. The magistrate submitted a proposed memorandum opinion granting the Commissioner's motion on the ground that the ALJ's decision was supported by substantial evidence. Bailey objected; the district court reviewed the record and convened a brief proceeding, during which the court overruled the objections and adopted the magistrate's opinion. Bailey appeals.

## II.

■ Social Security Ruling 83–20 provides, in pertinent part:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. *This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge [ALJ] should call on the services of a medical advisor when onset must be inferred.*

(emphasis supplied). The Ruling's language does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred. Nevertheless, if the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires. *Spellman v. Shalala,* 1 F.3d 357, 362–63 (5th Cir.1993); *Morgan v. Sullivan,* 945 F.2d 1079, 1082–83 (9th Cir.1991); *see Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989); *but see Pugh v. Bowen,* 870 F.2d 1271, 1278 n.9 (7th Cir.1989) (medical advisor was unnecessary where the ALJ had a complete medical chronology of the claimant's condition throughout the relevant time period).

■ In the instant case, the evidence regarding the onset date is ambiguous. Although the ALJ found that numerous ailments conspired to render Bailey permanently unable to work, the date on which the synergy reached disabling severity remains an enigma. In the absence of clear evidence documenting the progression of Bailey's condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.[3]

---

**3.** Moreover, in light of Dr. Peck's letter, it now appears that Bailey's diabetic episode may have been more serious than the ALJ had believed. An accurate assessment of the impact of that episode—by itself and in conjunction with the other impairments—on Bailey's ability to work is essential to a fair resolution of her claim. These issues are so complex that they cannot be accurately resolved unless a medical advisor is consulted.

Bailey urges us to reverse the Commissioner's decision outright and award her benefits as of November 30, 1989. Her argument is based on other language in SSR 83–20, providing that "[i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." Though we are by no means convinced that the onset date alleged by Bailey is *in* consistent with the existing record, we cannot say with any assurance that the opposite is true. Our inability to form a conclusion is attributable precisely to the inadequate development of the record regarding the effect of Bailey's diabetic episode. Of course, the Commissioner's employing the correct procedure raises the possibility that, on remand, substantial evidence might support a finding that Bailey first became disabled *less* than six months prior to the consultative examinations.

The requirement that, in all but the most plain cases, a medical advisor be consulted prior to inferring an onset date is merely a variation on the most pervasive theme in administrative law—that substantial evidence support an agency's decisions. *See Pleasant Valley Hosp., Inc. v. Shalala,* 32 F.3d 67, 70 (4th Cir.1994) ("The Secretary's [now Commissioner's] decision should be affirmed where supported by substantial evidence and not arbitrary, capricious, or otherwise contrary to law.") (internal quotation marks, ellipses, and citation omitted). Here, the ALJ's decision to award benefits as of six months prior to the consultative examinations was wholly arbitrary; it was thus not supported by substantial evidence. In cases such as this one, medical advisors are the prescribed mechanism for reaching the required evidentiary threshold; their services may not be dispensed with by fiat.

The judgment of the district court is vacated, and the case is remanded so that it may be further remanded to the Commissioner for additional proceedings consistent with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS.*