**Prudence CAMPBELL, SSN: 347–52–1380, Plaintiff,**

v.

**Shirley CHATER, Commissioner of Social Security, Defendant.**

No. 96 C 6.

United States District Court, N.D. Illinois, Eastern Division.

July 11, 1996.

Security Shirley Chater ("Commissioner") denying Campbell's application for disability insurance benefits pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423.[1] As is usual in these cases, Campbell and Commissioner have filed cross-motions for summary judgment under Fed.R.Civ.P. ("Rule") 56, with Campbell alternatively requesting a remand for a new hearing. For the reasons set out in this memorandum opinion and order, both summary judgment motions are denied but Campbell's request for a remand is granted.

### Background

Campbell, who was born in 1939, has most recently worked as a punch press operator. She had held that job for 12 years before she stopped working in 1984 because she was "off and on sick" (R. 62, 83). It is undisputed that Campbell's insured status expired on December 31, 1989 because of her limited earnings history, and so the dispositive question in this case is whether Campbell was disabled on or before that date.

Campbell filed an application for disability benefits on April 23, 1992, asserting that she had become disabled on December 11, 1984 (R. 97). Campbell listed a number of impairments in that respect (R. 101): diabetes, a third degree burn on her right hand, asthma, a bad heart, high blood pressure and the lingering effects of a nervous breakdown that she suffered in 1982. Campbell's application was denied both initially (R. 125–26) and on reconsideration (R. 136).

Campbell next sought a hearing, which took place before Administrative Law Judge ("ALJ") Irving Stillerman on August 4, 1993. Campbell testified at the hearing, as did her husband. She was not represented by counsel because her attorney had withdrawn before the hearing due to a dispute over fees (R. 52–53). On November 3, 1993 ALJ Stillerman issued a decision denying disability benefits.[2]

Barry Schultz, Schultz & Winick, Chicago, IL, for Plaintiff.

Jack Donatelli, United States Attorney's Office, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Prudence Campbell ("Campbell") appeals the final decision of Commissioner of Social

---

**1.** Further citations to the Act's provisions will take the form "Section —," using the Title 42 numbering rather than the Act's internal numbering. Pertinent regulations from 20 C.F.R. are cited "Reg. § —." "R. —" denotes the administrative record.

**2.** That decision is not included in the record.

Campbell, by then represented by her current attorney, filed a request for review with the Appeals Council. Campbell argued that because the ALJ had stated during the hearing that he would have found her disabled if the issue had been one of current disability, Social Security Ruling ("SSR") 83–20 required that the ALJ obtain the services of a medical expert to determine a disability onset date (R. 28–29). Campbell also urged that the evidence before the ALJ supported a finding of disability as of December 31, 1989 (R. 29). On June 7, 1994 the Appeals Council granted Campbell's request for review and remanded the case (R. 245–47). That was found necessary in principal part because (R. 246):

> The claimant appeared at the hearing without a representative. The Administrative Law Judge inquired as to why she did not have a representative. However, the Administrative Law Judge did not secure her acknowledgement of the right to representation, and affirmation of her decision to proceed without a representative, as required by HALLEX I–2–652.

ALJ Stillerman held another hearing on December 13, 1994, this time with Campbell represented by counsel. ALJ Stillerman incorporated the testimony and evidence from the first hearing into the second hearing (R. 80). In addition to testimony from Campbell and her husband, the ALJ also had this medical evidence before him:

1. medical records tracking Campbell's health from 1981 to the time of the hearing (R. 151–265);

2. a November 1992 letter from Dr. Ronald Feingold, Campbell's long-time doctor, who opined that Campbell had been disabled since December 1989 (R. 206); and

3. the opinion of consulting physician Dr. Julian Freeman, who examined Campbell's medical record and concluded that her symptoms were consistent with slowly evolving cardiomyopathy (R. 249–51).

On April 23, 1995 the ALJ issued a written decision, again denying Campbell's benefits claim (R. 15–22). ALJ Stillerman first rejected her contention that she was disabled before December 31, 1989 because of lingering residuals from a 1981 nervous breakdown, uterine bleeding, asthma or diabetes.[3] Next the ALJ turned to the onset date of Campbell's present condition, which he termed a "significant heart impairment" (R. 19). ALJ Stillerman found no objective medical evidence to support Campbell's claim of disability since 1984, and he also rejected Campbell's own testimony that she was disabled as not credible because of (1) the relative infrequency of her medical treatment and (2) her lack of complaints about a heart problem when she did seek treatment (R. 20). As for Dr. Feingold's opinion, the ALJ rejected it as not credible because it was "completely unsupported by the objective medical evidence" (R. 21) in that Dr. Feingold had not memorialized any concerns about Campbell's heart before 1989. ALJ Stillerman also rejected Dr. Freeman's opinion because "it is based in part on claimant's own statement of syncopal episodes" (R. 21), which he had earlier found lacked credibility.

Once again Campbell filed a request for review, contending that the ALJ's decision was not supported by the record and reiterating her earlier complaint that the ALJ had failed to comply with SSR 83–20. This time the Appeals Council denied Campbell's request for review (R. 3–4), making the ALJ's decision Commissioner's final decision (Section 405(g); Reg. § 404.981). Campbell then exercised her right under Section 405(g) and filed an appeal to this Court.

Campbell essentially advances two claims here. First she argues that the ALJ should have followed SSR 83–20 by calling on the services of an independent medical advisor to determine the onset date for her claimed disability. In addition she contends that the ALJ made an independent (and hence improper) medical determination by rejecting the opinions of Drs. Feingold and Freeman and substituting his own take on the objective medical evidence.[4]

---

3. Campbell does not challenge any of those findings.

4. Campbell's counsel attempts to break that second contention into three parts, with the other two segments emphasizing the credence that

Judicial opinions in the social security area typically contain a lengthy recital of the factual record before the ALJ, in principal part because the question for decision is most often whether the ALJ (and hence Commissioner) have reached a result supported by "substantial evidence." This Court's usual opinions in the field are no exception to that, but in this instance the very different nature of the legal issues that are presented for decision obviates any need for such treatment. This opinion therefore turns directly to those legal issues.

### SSR 83–20 [5]

Campbell's first argument requires this Court to consider what appears to be an issue of first impression in this Circuit: what type of affirmative finding of disability by the ALJ is necessary to trigger SSR 83–20's procedures for finding the onset date of disability. Because the disability that Campbell claims on appeal—a heart problem that progressed slowly until the point of disability—is of nontraumatic origin, and because the ALJ noted during the hearing that he would find Campbell currently disabled if that were at issue (R. 75–76), Campbell asserts that SSR 83–20 should have been brought into play and that the ALJ therefore erred by not calling for the assistance of a medical advisor in choosing a disability onset date.

In response Commissioner initially took the position (Mem. 14) that "S.S.R. 83–20 comes into play *after* the Commissioner finds that a claimant is disabled" and that (*id.*):

> Because the Commissioner never found that Ms. Campbell was disabled (Tr. 18–22), S.S.R. 83–20 was inapplicable to the instant case.

Tr. 18–22 is a reference to ALJ Stillerman's post-remand written decision. When Campbell's counsel then pointed (as he also had in his initial memorandum) to the ALJ's oral confirmation of Campbell's disability on the record during the initial hearing, Commissioner's Surreply (filed with special leave of court) shifted emphasis to a contention that the ALJ's statement was not a "formal finding."

■ It should first be said that Commissioner's insistence on a "formal finding"—whatever that may mean—is a manufactured concept that finds no warrant anywhere either in the statute or in its implementing regulations or in any of the case law. Commissioner has created that notion out of whole cloth in her effort to distinguish cases from our Court of Appeals that have had occasion to treat with SSR 83–20—she points out that in each of those cases the ALJ had included a finding of disability as part of his or her written opinion en route to addressing the effect of such a finding on the requirements set out in SSR 83–20. But because SSR 83–20 is a directive *to the ALJ* as to the operative ground rules and procedure that must be followed where a claimant is or has been disabled and where the claim necessitates a determination of the onset date of that disability, the only precondition to the ALJ's resort to SSR 83–20 should be the *fact* that the ALJ has found such disability—and not the particular manner in which the ALJ has articulated that finding.

This preliminary caveat is needed because the manner in which Commissioner has framed the issue—really a red herring in the respect just described—makes it somewhat difficult to engage in the analysis without occasionally running the risk of falling into

should have been given to the two rejected medical opinions. But the decision reached in this opinion effectively telescopes those contentions into the one stated in the text.

5. As a preliminary matter, Commissioner contends that Campbell waived the SSR 83–20 argument by not making it before the ALJ (D.Surreply at 4). That argument is unpersuasive. Campbell's attorney *did* raise the argument twice (once on each request for review) before the Appeals Council. As for the proceedings before the ALJ, the first time around he was dealing with an unrepresented claimant, a situation that

triggers the independent obligation of an ALJ to make certain that the record is fully developed (e.g., *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994) and cases cited there). And at the time of the second hearing the ALJ had to know that the SSR 83–20 issue had been a basis for the initial appeal. All of that undoubtedly satisfies the requirement of *Papendick v. Sullivan*, 969 F.2d 298, 302 (7th Cir.1992) that an argument must be made at the administrative level—including on the appeal to the Appeals Council—if it is to be made before the district court.

the trap of that artificial construct. To the extent that any portion of what follows may be susceptible to such a reading, it should be understood from the outset that no such implication is intended. Now to the task.

SSR 83–20, which is binding on all components of the Social Security Administration (*Lichter v. Bowen*, 814 F.2d 430, 434 n. 5 (7th Cir.1987)), has this purpose (Social Security Rulings, 1983 cum. ed. (hereafter "Rulings") at 109):

> To state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act (the Act) and implementing regulations.

In disabilities of nontraumatic origin, SSR 83–20 requires that three factors be considered in determining the onset date. For that purpose the "starting point" (*id.* at 110) is the applicant's own contention, which "should be used if it is consistent with all the evidence available" (*id.* at 111). Work history is the second factor, with "[t]he day the impairment caused the individual to stop work" being "frequently of great significance in selecting the proper onset date" (*id.* at 110). Finally, "medical evidence serves as the primary element in the onset determination" (*id.*). On that score SSR 83–20 stipulates that the onset date "can never be inconsistent with the medical evidence of record" (*id.* at 111).

For present purposes a crucial portion of SSR 83–20 is its section titled "Precise Evidence Not Available—Need for Inferences." Here it is in pertinent part (*id.* at 111–12):

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts of a particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the

services of a medical advisor when onset must be inferred.

\*    \*    \*    \*    \*    \*

> The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

*Bailey v. Chater*, 68 F.3d 75, 80 (4th Cir. 1995) has said that the SSR 83–20 requirement that "in all but the most plain cases, a medical advisor be consulted [by the ALJ] prior to inferring an onset date is merely a variation on the most pervasive theme in administrative law—that substantial evidence support an agency's decisions." Campbell says that the quoted portions of SSR 83–20 and of *Bailey* could well have been written for the present situation, so that the ALJ clearly erred by reaching his decision without the aid of a medical advisor.

As stated earlier, Commissioner on the other hand contends that SSR 83–20 is not implicated because it is triggered only by a formal finding of disability, one that was not made in the ALJ's written ruling here. That argument rests on two passages from SSR 83–20:

1. Here is the first sentence of the introduction (Rulings at 109):

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.

2. In discussing consultation with a medical advisor, SSR 83–20 says in part (*id.* at 111):

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.

Commissioner claims that those two passages mean that only a formal finding of disability calls SSR 83–20 into play. For that purpose Commissioner seeks to call to her aid *Spradlin v. Secretary of HHS*, 857 F.Supp. 1215, 1224 (S.D.Ohio 1993), *aff'd without published op.*, 25 F.3d 1050 (6th Cir.1994). But that is extraordinarily puzzling: At most *Spradlin* holds that a finding of disability is a precondition to the applicability of SSR 83–20, but it casts no light at all to what is needed to evidence such a finding ("formal" or otherwise)—concededly the ALJ there had made no such finding at any time or in any way.

Before this opinion turns to the ultimately dispositive point that Commissioner's "formal" position is bankrupt under the circumstances of this case, it may be worth spending a few moments on the more generally troublesome nature of Commissioner's position. Whether taken separately or together, the two sentences cited by Commissioner from SSR 83–20 certainly do not command the result that she urges. And it must be recognized that Commissioner's position would put Campbell and claimants like her in an unacceptable bind. Commissioner has herself pointed out that (D.Surreply at 3) "[Campbell] fails ... to cite any authority requiring an ALJ to adjudicate a period not at issue—the period after her insured status expired." According to Commissioner, then, there was no occasion for the ALJ to consider whether or not Campbell became disabled at any time except on or before December 31, 1989.

But the acceptance of Commissioner's position that SSR 83–20 simply does not apply to Campbell's case because the ALJ did not "formally" find her disabled at a date later than the critical date would create a hopeless Catch–22 dilemma for Campbell: By definition Campbell cannot avail herself of the procedures set out in SSR 83–20 to show that she was disabled before December 31, 1989 unless the ALJ *first* finds that she was dis-

abled at a later time, but on Commissioner's reading she cannot ask the ALJ to make such a finding (or indeed any disability determination except as to whether she was disabled before December 31, 1989)—thus frustrating the ascertainment of the very thing that Campbell is trying to prove by drawing upon the procedures in SSR 83–20. In other words, Campbell wants to invoke SSR 83–20 to show that she was disabled, but Commissioner says that she cannot do so unless she first shows that she was disabled. At bottom Commissioner's position really reads SSR 83–20 out of existence for claimants such as Campbell.

In addition to that problematic factor, Commissioner's position is distressingly myopic: It actually disserves the interests of the ALJs for whom SSR 83–20 was written (at least in part) as a guide. Making an onset-of-disability determination is undeniably a difficult task in the context of progressive impairments. Indeed, the very notion of a single onset date in that context is a classic legal fiction: To find that on Day X a claimant was not disabled but that on Day X + 1 she has become disabled really defies reality. But such slowly progressive impairment cases do arise, and SSR 83–20 was published *by Commissioner* (see Rulings at iii) for the very purpose of "describ[ing] the relevant evidence to be considered when establishing the onset date of disability" (*id.* at 109). And SSR 83–20's most detailed section is the one labelled "Onset of Disabilities of Nontraumatic Origin," the very type of disability claimed here. Commissioner's suggested approach would throw her own policies out the window in cases where the claimant urges that she was disabled by a progressive impairment but the ALJ has no other independent reason to make a threshold disability determination.[6]

In fact Commissioner's position would lead to a strange and inconsistent application of SSR 83–20. Think about how Commission-

---

6. It is unclear how often this scenario arises. This Court could locate only one case (*Spradlin*) in which an express decision not to apply SSR 83–20 was made because the claimant was found not disabled. Of course the question then becomes a no-brainer—in that situation there is no need to use SSR 83–20 to determine an onset

date, because there is no disability at all. By contrast, the majority of cases there is a determination that disability existed at some time, but the question is *when* the disability began, in order to calculate how far back the claimant should receive benefits.

er's approach would play out in terms of a time line. In the progressive impairment scenario, the claimant contends that an impairment got worse and worse until it crossed the disability threshold. Finding that threshold point—the onset date—is often critical (Rulings at 109), and SSR 83–20 was written to aid the ALJ in making that finding.

But according to Commissioner, SSR 83–20 is implicated only if the ALJ has a reason to look first at the time line as a whole and to decide if a disability existed at some point—only if the answer is "yes" can the ALJ apply SSR 83–20 to backtrack and find the onset date. If, however, the question is whether at a certain time the progressive impairment had rendered the claimant disabled—so that the question of disability vel non and its onset date merge into one—Commissioner says that SSR 83–20 does not apply. That is true, according to Commissioner, even though the issue posed is exactly the same, and even though SSR 83–20 would undoubtedly aid the ALJ in both scenarios. Such an approach just cannot be right.[7]

In the most important sense, though, what has gone before is really beside the mark for purposes of adjudicating this case. This Court need not here decide what circumstances should generally cause an ALJ to address the existence of a disability as of some date other than the critical date for a claimant's entitlement to benefits. Why? Because the indisputable fact is that ALJ Stillerman *did* address and decide that question as to Campbell—and with his having done so, SSR 83–20 should just as indisputably have been brought actively into the case.[8]

Here is what ALJ Stillerman said to then pro se claimant Campbell during the course of the first hearing (R. 75–76):

Listen to me for a second. If your case was the ordinary kind of case where you had what we called insured status right now where I was just trying to determine what your condition is right now, okay, I would find you disabled. Okay. There's no question about that. But you got an additional problem and that's what you have to face up to and you got to help me with. Okay? There's no question if I had to look at what you're—based upon the reports the doctor gives me as to what your condition is right now, I would have to find that you were disabled. All right? You have a significant heart condition. All right? The problem that you have to prove and I have to find is were you severely impaired before December 1989 and from what.

"Formal" or not, ALJ Stillerman's statement was surely unequivocal as to Campbell's disability at the time of the hearing. Moreover, even if Commissioner's present makeweight emphasis on formalism had any force (as it does not), ALJ Stillerman's April 23, 1995 decision could well be read as containing a "formal" finding that Campbell was disabled at the time of the ruling (R. at 19–20) (emphasis added, internal citations omitted):

> *Presently, the claimant has a significant heart impairment.* In April, 1992, she required hospitalization for congestive heart failure. Cardiac catheterization indicated that she had left ventricular dysfunction.
>
> However, the claimant's current medical condition does not establish her eligibility for a period of disability and disability insurance benefits. In order to qualify for these benefits, the claimant must establish that *her disability* began on or before her date last insured of December 31, 1989. The Administrative Law Judge finds that the claimant had no severe impairment, or

7. Commissioner points out that *Spradlin*, 857 F.Supp. at 1224 concluded that SSR 83–20 comes into play only upon a finding of disability. But quite apart from the fact that this Court would be free to disagree with *Spradlin* if need be, the point is irrelevant: As discussed in the text that follows, ALJ Stillerman *did* make a finding of Campbell's disability here (albeit not in the form that Commissioner—without any support—would prefer).

8. If an ALJ finds that a claimant has not been disabled at *some* point (even after the last insured date), there is no need to go back to determine the onset date, for there is no onset date to determine. But if the threshold issue of disability at some time is answered in the affirmative, SSR 83–20 necessarily guides the ALJ in looking back to determine the onset date.

combination of impairments, on or before her date last insured.

Surely the references to Campbell's "significant heart impairment" and later to "her disability" could fairly be read as a "formal" finding by the ALJ—if one were needed to confirm his express oral statement—that Campbell was presently disabled.[9]

■ Because ALJ Stillerman plainly found Campbell disabled at the time of the hearing, he should have turned to SSR 83–20 for guidance in determining whether the onset date of that disability was before December 31, 1989. This case must therefore be remanded for a new determination of the disability onset date, this time with the ALJ following SSR 83–20.

### ALJ's Improper Substitution of His Own Opinion

What has already been said compels a remand. And Campbell's second argument also not only leads to the same result (albeit by a different route) but also buttresses the need for the ALJ to call on an outside medical expert (as SSR 83–20 specifies) to ground his conclusion, whatever it may be, with "substantial evidence in the record."

■ This portion of the analysis can begin by setting out a principle that has by now become axiomatic in social security cases: This Court's review of the ALJ's decision is limited to whether it is supported by substantial evidence in the record (e.g. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir.1995)). "Substantial evidence" has been defined as requiring "no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" (*id.,* quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

■ As modest as that requirement is, the ALJ has failed to meet it here. After ALJ Stillerman tossed out the opinions of Drs. Feingold and Freeman as not credible, not a stitch of expert testimony was left in the record. Nonetheless the ALJ forged ahead with his own reading of the objective medical evidence and concluded that Campbell was

not disabled before December 31, 1989. That alone is problematic, for an ALJ cannot properly make an independent medical determination when there is no supporting expert testimony in the record (e.g., *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982)). At any rate, what the record reflects is ALJ Stillerman's making a determination solely on his own reading of the objective medical evidence, and doing so against the opinions of two medical experts. That can hardly be characterized as "substantial evidence."

■ Significantly, the ALJ's approach really confirms the importance of the SSR 83–20 requirement that an ALJ should call on the services of a medical advisor when inferring the onset of disability. If ALJ Stillerman *was* inclined to reject the testimony of Drs. Feingold and Freeman as not credible, he should have requested that an independent medical expert take a fresh look at the objective medical evidence—precisely what SSR 83–20 called for him to do. Not having done so, the ALJ failed to render a decision supported by substantial record evidence (see *Bailey,* 68 F.3d at 80; *Spellman v. Shalala,* 1 F.3d 357, 362–63 (5th Cir.1993); *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir.1991)).

Nor does *Pugh v. Bowen,* 870 F.2d 1271, 1278 n. 9 (7th Cir.1989) counsel a different outcome. Although SSR 83–20 did apply in *Pugh,* it was there found unnecessary for the ALJ to consult a medical expert before making a decision consistent with the opinions of five treating physicians and two diagnostic physicians. *Pugh* concluded (*id.*)

> Because the ALJ had a relatively complete medical chronology of Pugh's medical condition from early 1982 through late 1985, the ALJ had no need for the services of an additional medical expert as Pugh now contends.

That is utterly unlike this case, in which the ALJ threw out the only two medical opinions in the record and then "supported" his no-disability finding only with his own reading of the objective medical evidence.

■ ALJ Stillerman's decision, based as it was solely on his own reading of the objec-

---

9. That was also in line with Dr. Feingold's opin-

ion (see R. 207, 208, 242).

tive medical evidence without the assistance of any medical professional (and indeed directly contrary to the only two medical opinions in the record), is neither supported by substantial evidence in the record nor reflective of the "legitimate medical basis" that SSR 83–20 commands. For that reason, too, a remand is necessary.

*Conclusion*

Both summary judgment motions must be denied—Commissioner's for the reasons discussed at length in this opinion and Campbell's because Commissioner is just as entitled to have the ALJ follow SSR 83–20 as is Campbell. Instead, because ALJ Stillerman improperly failed to follow SSR 83–20 and also failed to render a decision supported by substantial evidence in the record, this case must be and is remanded for a new hearing consistent with this opinion. This time the ALJ must, as SSR 83–20 requires, call on the services of a medical advisor to assist him in making the onset-of-disability determination, and he must also follow the other guidelines set out in SSR 83–20.