104 F.3d 356
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Corliss THOMAS, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of the Social Security
Administration, Defendant-Appellee.
 No. 96-6127.
 United States Court of Appeals, Second Circuit.
 Dec. 18, 1996.
 
 Appeal from the United States District Court for the Southern District of New York (Richard Owen, Judge).
 APPEARING FOR APPELLANT: Christopher James Bowes, MFY Legal Services, Inc., New York, N.Y.
 APPEARING FOR APPELLEE: Linda A. Riffkin, Asst. U.S. Atty., New York, N.Y.
 Before NEWMAN, Chief Judge, and WINTER and WALKER, Circuit Judges.
 
 
 1
 S.D.N.Y.
 
 
 2
 AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 4
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 5
 Corliss Thomas appeals from the District Court's July 11, 1996, judgment granting the Social Security Commissioner's motion for summary judgment. Thomas contends that the District Court erred in rejecting her treating psychologist's retrospective opinion that Thomas was disabled as of June 1987 and in finding that substantial evidence supported the administrative law judge's determination that December 15, 1989, was the onset date of her disability.
 
 
 6
 Thomas originally applied for disability insurance benefits in June 1987, alleging disability due solely to chronic uveitis. Her application was denied initially and on reconsideration in January 1988. Thomas then requested a hearing before an ALJ, who found in April 1988 that Thomas's uveitis had only minimal effects on her vision and that she was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 401-433.
 
 
 7
 Thomas subsequently filed a pro se complaint in the District Court in October 1988. By stipulation of the parties, the matter was remanded to the Commissioner for further administrative proceedings. Specifically, the ALJ was required on remand to obtain a consultative ophthalmological examination and to evaluate further the opinion of Thomas's treating ophthalmologist.
 
 
 8
 At a November 1990 hearing before the ALJ, Thomas again testified that she was disabled due to uveitis. She additionally alleged the existence of a psychiatric impairment that contributed to her disability. Apart from her subjective complaints, Thomas relied solely on the medical report of Dr. Pabis, who had diagnosed schizophrenia on December 15, 1989, and had concluded that she was totally disabled at least as of June 1987, the date of her initial SSI application.
 
 
 9
 The ALJ obtained the assistance of Dr. Halperin, a board-certified psychiatrist, to act as a medical advisor at the hearing. He testified that Dr. Pabis failed to use accepted diagnostic techniques and that the extreme diagnosis of schizophrenia was not supported by the evidence. Dr. Halperin diagnosed Thomas as suffering from adjustment disorder of adult life, with anxiety and depression, and concluded that her impairment was "moderate" and "partial."
 
 
 10
 Relying upon Dr. Halperin's testimony and the medical reports of two psychiatric experts (Drs. Fenichel and King) who examined Thomas at the ALJ's request, the ALJ concluded that Thomas's visual acuity was only minimally affected by uveitis, that Thomas did not suffer from schizophrenia but from adjustment disorder with depression and anxiety, and that Thomas was disabled as a result of her mental impairment only since December 15, 1989. Thomas's request for review to the Appeals Council was denied in November 1991.
 
 
 11
 In October 1995, nearly four years after the conclusion of the administrative proceedings, Thomas reopened her 1988 action in the District Court, contending that the ALJ erred in not awarding disability benefits from June 1987 to December 15, 1989. The District Court affirmed the Commissioner's determination in its entirety.
 
 
 12
 1. Thomas primarily contends that the ALJ failed to abide by the Commissioner's treating physician regulation, 20 C.F.R. § 404.1527(d)(2), and thus erred in refusing to accept Dr. Pabis's retrospective opinion that Thomas was disabled by schizophrenia as of June 1987. Under this regulation, if the treating source's opinion "is well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record, the opinion will be accorded "controlling weight."
 
 
 13
 Even if we assume that Dr. Pabis qualifies as a treating source, his opinion that Thomas was totally disabled by schizophrenia as of June 1987 was not entitled to controlling weight because it was neither supported by accepted diagnostic techniques nor consistent with other substantial evidence in the record. First, Dr. Halperin testified that Dr. Pabis's heavy reliance upon the results of the MMPI test to diagnose schizophrenia was misplaced from a professional standpoint. Dr. Halperin also pointed out that Thomas did not have a history of psychotic symptomology or the usual signs of schizophrenia, such as psychotic delusions, suicidal ideation, paranoia, or hallucinations. Moreover, despite Dr. Pabis's diagnosis of schizophrenia, Thomas was prescribed only low dosages of an antidepressant and tranquilizer. Finally, none of the three psychiatric experts consulted by the ALJ--Drs. Fenichel, King, and Halperin--diagnosed Thomas as suffering from schizophrenia. The ALJ properly applied the treating physician regulation in rejecting both Dr. Pabis's diagnosis of schizophrenia and his speculation that the schizophrenia reached a disabling level by June 1987.
 
 
 14
 2. Alternatively, Thomas contends that the ALJ's determination that the onset date of disability was December 15, 1989, was not supported by substantial evidence. She also argues that the ALJ failed to abide by Social Security Ruling 83-20 ("SSR 83-20"), which "describe[s] the relevant evidence to be considered when establishing the onset date of disability" and requires such determinations to be based "on an informed judgment of the facts in the particular case." Under SSR 83-20, the ALJ's decision regarding the onset date of disability "must have a legitimate medical basis" and he "should call on the services of a medical advisor" if evidence concerning the onset date is ambiguous. See Bailey v. Chater, 68 F.3d 75, 79 (4th Cir.1995). We believe that the ALJ properly followed SSR 83-20 and that substantial evidence supports his onset-date determination.
 
 
 15
 Thomas has presented no evidence--apart from the properly discredited retrospective opinion of Dr. Pabis--that she was disabled prior to December 15, 1989. On the contrary, much available evidence shows that she was not disabled before this date. Between June 1987 and December 1989, Thomas applied for SSI benefits, appeared before an ALJ, sought the Appeals Council's review, filed a pro se suit against the Commissioner in the District Court, and negotiated a stipulated remand with the Commissioner, but did not once raise the possibility that she was suffering from a mental disability. Additionally, no one associated with the adjudication of Thomas's uveitis-based claim during this period--not even the ALJ who presided at both hearings--noticed that she was suffering from anything other than an eye disorder. Moreover, none of the numerous physicians who examined and treated Thomas's uveitis during this period ever mentioned that she was also potentially suffering from a mental impairment.
 
 
 16
 Indeed, some evidence would support a finding that the onset date of disability was well after December 15, 1989. For instance, Dr. Pabis, although diagnosing Thomas as suffering from schizophrenia since June 1987, did not prescribe any medication for her until November 1990. The type of medicine he eventually prescribed--low dosages of an antidepressant and tranquilizer--also indicates that Thomas's condition was not particularly serious even as of November 1990. Additionally, Dr. King, who examined Thomas in September 1990, found that, as of that date, Thomas did not suffer from hallucinations, delusions, suicidal thoughts, or paranoid trends, that her intellectual functioning was on an average level, and that she possessed either "limited but satisfactory" or "seriously limited but not precluded" ability to follow work rules, relate to co-workers, deal with work stresses, function independently, and maintain concentration. Moreover, the medical advisor, Dr. Halperin, who conducted a brief questioning of Thomas at the November 1990 hearing, opined that, even as of the hearing date, Thomas's mental impairment was "moderate" and "partial."
 
 
 17
 Presented with some evidence showing that Thomas's mental impairment was not disabling prior to December 15, 1989, and with other evidence showing that the impairment became disabling subsequent to this date, the ALJ somewhat generously selected December 15, 1989, as the onset date of Thomas's disability. Having obtained the advice of the medical advisor and having considered the record as a whole, the ALJ acquired the "legitimate medical basis" to make an informed decision as to the onset date of disability. The ALJ abided by SSR 83-20 and his onset-date determination is supported by substantial evidence.