**John GUTKA, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of Social Security, Defendant.**

**No. 97 C 7071.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 1, 1999.

Beth A. Alpert, Beth A. Alpert & Associates, Chicago, IL, for Plaintiff.

James John Kubik, Asst. U.S. Atty., United States Attorney's Office, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff John Gutka has appealed the Administrative Law Judge's (ALJ) decision denying him disability benefits under Title II of the Social Security Act. He now moves for summary judgment on his appeal, as does the Commissioner. For the reasons stated below, both motions are denied and the case is remanded.

## BACKGROUND

On July 20, 1994, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. He

alleged that he was disabled and unable to work due to heart disease that began with a heart attack on January 20, 1988. This application was denied initially on December 9, 1994, and upon reconsideration on January 30, 1995, on the grounds that plaintiff had recovered from his heart attack within twelve months and was consequently not disabled as a matter of law. Plaintiff then sought and received a hearing, held on February 26, 1996, and continued until May 17, 1996, before an ALJ. At that proceeding he was represented by counsel who argued that plaintiff had been disabled both by heart disease and mental depression since 1988.

In support of these contentions plaintiff produced his medical file, which revealed that in January 1988 he had a heart attack, followed by coronary angioplasty (Rec. 137–46). Although diagnostic tests revealed that he had recovered nicely and performed well on stress tests by May 1988 (Rec.160–65), he returned to the hospital in July 1988 and May 1989 complaining of chest pain. There he was examined by Drs. Cornell and Markovitz, who found no abnormalities (Rec. 166–74; 175–82). Three years later, in April 1992, he again went to the hospital, this time complaining of a numb arm and dizziness, but apparently making no mention of chest pain (Rec.183–87). His tests at a follow-up examination in June, 1992 were unremarkable. Two years later, in April 1994, he went to the emergency room complaining that he had experienced chest pain over the last several weeks, particularly when exerting himself, but his ECG was unremarkable and the pain subsided when he was given nitroglycerin (Rec.190). During this six-year period following his initial hospitalization, his medical records indicate that various examining physicians made three separate references to plaintiff's mental state, commenting that he was unhappy and anxious. However, there is no discussion or diagnosis of depression until Dr. Amdur, a psychiatrist, examined plaintiff on January 5, 1996, shortly before his disability hearing and concluded that plaintiff was suffering from depression and had been so afflicted since 1988, when his heart problems began.

The ALJ considered all of this evidence at the hearing and issued a decision on August 15, 1996, denying plaintiff's request for benefits. The ALJ found that plaintiff had been insured between January 20, 1988 and December 31, 1992, and thus met the threshold requirement for disability insurance during that period. However, the ALJ concluded that the evidence did not support plaintiff's contention that the heart disease and depression significantly limited his ability to perform basic work-related activities for twelve continuous months. Consequently, the ALJ found that plaintiff was not disabled for purposes of Title II. See ALJ's Decision at 8, Record at 22.

## DISCUSSION

On appeal, plaintiff argues that the ALJ erred in concluding that his depression did not constitute a disability during the time when he was insured, i.e. prior to December 31, 1992. Plaintiff relies heavily on the testimony of Dr. Amdur, who stated that plaintiff's symptoms of depression began in 1988.

We will affirm the ALJ's decision if his findings are supported by substantial evidence. *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The reviewing court "may not re-evaluate the facts, re-weigh the evidence or substitute its own judgment for that of the [ALJ]." *Edwards v. Sullivan,* 985 F.2d 334, 336 (7th Cir.1993). "[W]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (citations omitted). In order that the district court may

786

effectively review the ALJ's decision, the ALJ is required to articulate his reasons for accepting or rejecting entire lines of evidence. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994). Although the ALJ is not required to undertake a written evaluation of each piece of evidence and testimony, he may not simply select and discuss only that evidence which favors his ultimate conclusion. *Id.*

■ Workers disabled by reason of a medically determinable physical or mental impairment that is expected to last for twelve consecutive months are entitled to disability benefits under Title II of the Social Security Act. 42 U.S.C. § 423(d)(1)(a). A five-step analysis is used to determine whether the worker at issue is disabled: (1) Whether he is presently unemployed; (2) whether his impairment is severe; (3) whether the impairment meets or exceeds one of a list of specific impairments; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work in the national economy. 20 C.F.R. § 404.1520. A negative answer at any step, other than step three, results in a finding that the applicant is not disabled. *Arbogast v. Bowen,* 860 F.2d 1400, 1403 n. 1 (7th Cir.1988).

■ In this case the ALJ concluded that plaintiff's alleged depression did not constitute a "severe" mental impairment and consequently was not a disability. A severe impairment, for purposes of the statute, is one which significantly limits an individual's physical or mental ability to do basic work activities, such as using judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(4)-(6). It is well established that under some circumstances emotional depression may constitute a severe impairment. *See, e.g., Taylor v. Schweiker,* 739 F.2d 1240, 1242 (7th Cir.1984).

■ Here plaintiff's primary contention is that the ALJ erred in failing to credit Dr. Amdur's opinion, rendered on January 17, 1996, during his sole medical examination of plaintiff, that plaintiff has suffered from depression since 1988 and that this condition prevented him from engaging in work-related activities such as those listed above. Plaintiff argues that because Dr. Amdur's opinion was uncontradicted by other medical testimony, and supported by both plaintiff's and his wife's subjective reports, the ALJ was not at liberty to conclude that plaintiff did not suffer from disabling depression in 1992. We disagree. Although an ALJ is not permitted to rely only on the evidence that supports his conclusion and disregarded evidence to the contrary, he is not bound by thinly supported or incredible evidence. The issue here is what weight should or must the ALJ afford a physician's retrospective diagnosis, *i.e.* one that relates the plaintiff's claimed impairment back to the covered period. The Seventh Circuit has recently considered this issue and ruled that the ALJ may consider such a medical opinion "only if it is corroborated by evidence contemporaneous with the eligible period." *Estok v. Apfel,* 152 F.3d 636, 640 (7th Cir.1998). It is not enough for the plaintiff to simply produce a diagnosis with a retroactive onset date, particularly where the alleged impairment is one that becomes a disability only by matter of degree. *Id.*

■ The only doctor to diagnose plaintiff as suffering from depression was Dr. Amdur, who examined plaintiff for the first time in January 1996 and concluded that he had been suffering from depression since 1988. Dr. Amdur noted that plaintiff reported several symptoms of depression, including with sleep, appetite and a loss of libido over the past eight years. However, the various medical opinions rendered during that time reveal only three instances where any doctor commented on the plaintiff's mental state and contain no diagnosis of depression or prescriptions for related medication. On February 21, 1989, Dr.

Cornell noted that plaintiff was "unhappy" because his wife was diagnosed with breast cancer; on June 8, 1992, Dr. Markovitz noted that plaintiff complained of having "emotional stressors" in his life; and finally on November 22, 1994 (almost two years after plaintiff's insured status ended), Dr. Cornell observed that plaintiff was anxious and under stress and pressure at home. Other than plaintiff's and his wife's subjective reports, this is the only evidence that could possibly corroborate Dr. Amdur's retrospective diagnosis. Subjective reports of pain or disability, however, will not control the ALJ's decision where there is other evidence inconsistent with the level of severity alleged by the plaintiff. *See, e.g., Siemers v. Shalala,* 47 F.3d 299 (8th Cir.1995) (holding that substantial evidence supported ALJ's decision to discredit applicant's subjective complaints of pain where the clinical evidence was slim, the applicant failed to seek regular medical treatment and applicant did not take prescription medications). In light of the paucity of medical evidence corroborating Dr. Amdur's retrospective diagnosis, and plaintiff's failure to seek any treatment or to take medication for this problem, we find that the ALJ's failure to adopt Dr. Amdur's retrospective opinion was supported by substantial evidence in the record.[1] Moreover, the ALJ's opinion reveals that his decision was based upon a thorough consideration of all of the evidence, including those medical reports and witness statements supporting plaintiff's claims. We deny plaintiff's motion for summary judgment.

▮ However, that does not end the matter. We also deny the Commissioner's motion because we agree with plaintiff's position that the ALJ should have sought the advice of a medical advisor pursuant to Social Security Ruling 83–20, which sets down guidelines for determining the onset of a disability of nontraumatic origin. This Social Security Ruling requires an ALJ to call upon a medical advisor in cases where the onset of a disability cannot be affixed to a particular date and must consequently be inferred. The Commissioner responds that SSR 83–20 does not apply in cases where the ALJ determines that the applicant was not disabled prior to his last insured date. In other words, the Commissioner argues that the ALJ's order of inquiry should be as follows: The ALJ should first determine the relevant insured period and then examine the evidence that indicates the applicant was disabled during that time. If the ALJ determines the applicant was disabled prior to his last insured date, and if the disability was one of nontraumatic or progressive origin, then pursuant to SSR 83–20 the ALJ must engaged a medical advisor to determine the precise onset date.

We disagree with the Commissioner's proposed approach. If the evidence presented at the disability hearing establishes that the applicant is suffering from a nontraumatic disability, the ALJ must necessarily determine the disability's start date in order to determine whether the problem began prior to the last insured date. In that situation SSR 83–20 requires the ALJ to consult a medical advisor. *See Campbell v. Chater,* 932 F.Supp. 1072, 1077 (N.D.Ill.1996); *Grebenick v. Chater,* 121 F.3d 1193, 1200–1201 (8th Cir.1997). At petitioner's hearing, although the ALJ did not expressly find that Mr. Gutka was disabled due to depression, Dr. Amdur's opinion that plaintiff was presently dis-

---

**1.** Although plaintiff now asserts that he failed to seek treatment because he was afraid of doctors, there is no evidence supporting this contention other than the subjective accounts of plaintiff and his wife. Moreover, we have found no Social Security Act case allowing such a fear to outweigh the Administration's legitimate need to support its decisions with medical evidence except in one which involved the applicant's refusal to have a painful surgery. *See Morse v. Gardner,* 272 F.Supp. 618, 629–630 (E.D.La.1967). Particularly in light of the fact that plaintiff had seen physicians on numerous previous occasions, and no painful procedures would apparently be involved in treating depression, we find this case distinguishable.

abled was uncontroverted. In order to determine whether the depression began prior to Mr. Gutka's last insured date, the ALJ had to infer an onset date. Thus, under SSR 83–20 he should have involved a medical advisor, something he did not do.

## CONCLUSION

The motions for summary judgment are denied and the case is remanded to the ALJ so that he may determine whether the evidence establishes that plaintiff is presently disabled (we think it does) and, with the assistance of a medical advisor, the onset date of plaintiff's condition.